[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 10, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-13384

_____

D.C. Docket No. 02-00018-CR-4-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JAVADO BARNER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 10, 2006)**

Before ANDERSON, HULL and GIBSON[*], Circuit Judges.

GIBSON, Circuit Judge:

---

*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

The United States appeals from the district court's dismissal of the Fifth Superseding Indictment in this case. The government contends that the district court erred in concluding that the facts of this case warranted a presumption that the Fifth Superseding Indictment resulted from prosecutorial vindictiveness. We hold that no such presumption of vindictiveness was proper, but we remand for the district court to make findings as to whether the Fifth Superseding Indictment was the result of actual vindictiveness.

Javado Barner was first indicted in this case on February 12, 2002. On May 13, 2002, Barner filed a motion to dismiss or redact the indictment. On May 16, 2002, Barner's trial counsel moved to withdraw from representing Barner. On May 31, 2002, the magistrate judge granted trial counsel's motion to withdraw. On that same day, substitute counsel was appointed.

A Fourth Superseding Indictment was returned against Barner on June 12, 2002. Count 1 of that indictment charged Barner and others with a conspiracy to possess cocaine, marijuana, and ecstasy with intent to distribute them and alleged that the defendants had obtained the narcotics by robbing people they thought were drug dealers. Barner was also charged with conspiracy to possess firearms in furtherance of a drug trafficking offense (Count 2); possession of 500 grams or more of cocaine with intent to distribute it (Count 3); possession of firearms in furtherance of the drug trafficking crimes alleged in Count 3 (Count 4); four

counts of using and carrying firearms in furtherance of the particular drug trafficking conspiracy charged in Count 1 (Counts 5-8); and possession of 30,000 pills of ecstasy with intent to distribute them (Count 9).

On July 12, 2002, Barner pleaded guilty to Counts 1 and 6, in return for which the government agreed to seek dismissal of the remaining counts and to recommend a sentence of 144 months' imprisonment. All the other co-defendants also pleaded guilty and received sentences ranging from 57 months to 18 years, according to their respective culpability and cooperation, as assessed by the prosecutors.

However, rather than proceeding to sentencing under the plea agreement, Barner moved to withdraw his plea agreement on December 4, 2002, on the ground that he had received ineffective assistance of counsel,[1] and the court granted his motion on February 18, 2003.

On February 21, 2003, Barner's new counsel filed a motion for leave to file additional pre-trial motions. On March 5, 2003, the district court gave Barner's trial counsel ten days to file additional pre-trial motions.

---

[1]Also on December 4, 2002, Barner's second trial counsel moved to withdraw. The district court granted the motion on December 9, 2002, and remanded the case to the magistrate judge for appointment of new counsel. On December 10, 2002, the magistrate judge appointed new counsel, Barner's third counsel.

On March 4, 2003, Barner's counsel filed several motions, including a motion to dismiss counts and to redact the indictment, a motion to suppress certain statements, and a motion to dismiss three of the four remaining gun counts (Counts 5-8) because they all related to the single conspiracy charged in Count 1 and were therefore multiplicitous.

On July 18, 2003, Barner's counsel filed a motion to dismiss the indictment based upon prosecutorial misconduct.[2]  Barner alleged that the government had used perjured testimony before the grand jury.  He requested a copy of the grand jury transcripts.  In reply, the government emphasized that at the earlier suppression hearing, the government witness had admitted that he mistakenly testified before the grand jury about Barner's involvement in one of the counts.

On September 26, 2003, the government moved to dismiss Counts 3 and 4 because it became clear that Barner was not present during the crimes alleged. The district court granted the government's motion on the same day.

On October 17, 2003, the magistrate judge recommended granting Barner's motion to dismiss three of the four gun counts for multiplicity; the government did not object to the recommendation, and the district court adopted it and dismissed the counts.

---

[2]Barner signed the motion as the "Defendant, pro se."  Barner's counsel signed the motion as "standby counsel."

On February 4, 2004, the district court denied Barner's motions to suppress and to dismiss the indictment based upon prosecutorial misconduct. As to the misconduct motion, the district court adopted the magistrate judge's report and recommendation, finding that: (1) while the witness had made a mistake in his grand jury testimony, there was no evidence the witness knowingly provided false testimony; (2) there was no evidence that the prosecutor knew the witness had made a misstatement before the grand jury; and (3) once the government discovered the mistake, it moved to dismiss Counts 3 and 4 of the indictment (as well as overt act six of Count 1).

At about this same time, the district court set the case for trial on March 8, 2004. On February 9, 2004, the government sought a two-week continuance until March 22, 2004, stating that it needed the time to secure the presence of out-of-state witnesses. The district court continued the trial to March 29, 2004, but stated that it would not entertain any further continuance motions.

On March 17, 2004, the government obtained a Fifth Superseding Indictment against Barner, the only remaining defendant. In addition to the old drug trafficking conspiracy and ecstasy counts (now Counts 1 and 10), the new indictment added four Hobbs Act robbery counts based on the same robberies alleged in the old conspiracy count (now Counts 2, 4, 6 and 8), and four counts of using firearms in connection with a crime of violence (now Counts 3, 5, 7, and 9).

5

Each of the firearms counts was alleged in connection with one of the Hobbs Act counts.

Barner moved to dismiss the Fifth Superseding Indictment on the ground that it was the result of prosecutorial vindictiveness. On May 19, 2004, the magistrate judge recommended that Barner's motion be denied. The magistrate judge found there was no evidence of actual vindictiveness. The magistrate judge also concluded that the facts did not trigger a presumption of vindictiveness and that, even if the presumption applied, the government rebutted it by showing that the Fifth Superseding Indictment reflected a decision to correct a mistake in the preceding indictment.

After conducting a hearing, the district court made no finding of actual vindictiveness, but determined that there should be a presumption of vindictiveness for the following reasons. First, the threshold conditions for such a presumption existed: Barner had exercised legal rights to withdraw his guilty plea and to challenge several counts of the indictment for multiplicity, and the prosecutor had subsequently increased the charges and the punishment for which Barner stood in jeopardy. Second, after obtaining a continuance for the avowed purpose of securing witnesses for trial, the government in fact used the additional time to obtain the new indictment. Third, the increased charges were not made in the context of plea bargaining, since the government made no plea offer to Barner

6

between the time the charges in the Fourth Indictment were dismissed and the return of the Fifth Superseding Indictment and did not inform Barner that he would be reindicted. Fourth, Barner's co-defendants, who pleaded guilty, received far lower sentences than the sentence Barner would receive were he convicted on all the charges of the Fifth Superseding Indictment. In particular, the district court remarked that the ringleader and most culpable defendant, Johnathan Dale, had pleaded guilty to various charges of the Fourth Superseding Indictment and had been sentenced to 18 years' imprisonment. In contrast, the court calculated Barner's potential sentence under the Fifth Superseding Indictment at 103 years. Fifth, the district court compared Barner's potential sentence under the new indictment to his potential sentence under the old indictment <u>after</u> the multiplicitous counts had been dismissed, which it calculated at 12 years, rather than comparing all the prison time that the Fourth Superseding Indictment had originally charged,[3] which the parties stated at the hearing would have been either something in excess of 107 years (according to the prosecutor) or 87 years (according to Barner). Sixth, the court compared the potential sentence under the new indictment to what Barner would have received under the plea bargain he

---

[3]Minus the counts the government dismissed voluntarily.

7

rejected, which was 12 years. Based on these factors, the court concluded that there was a realistic likelihood of vindictiveness in the case.[4]

The district court dismissed the Fifth Superseding Indictment and ordered that Barner stand trial on the Fourth Superseding Indictment, minus the multiplicitous counts.

The government appeals the dismissal of the Fifth Superseding Indictment, arguing that the law does not permit a presumption of vindictiveness in the circumstances of this case and that there was no evidence of actual vindictiveness.

## I.

Although this Court has not explicitly determined the standard of review in prosecutorial vindictiveness cases, "[t]he dismissal of an indictment on the ground of prosecutorial misconduct is a discretionary call; we therefore review the court's action for an abuse of discretion." United States v. Jordan, 316 F.3d 1215, 1248-49 (11th Cir. 2003) (internal footnote omitted); accord United States v. Clay, 376 F.3d 1296, 1300 (11th Cir. 2004), cert. denied, 543 U.S. 1192 (2005). "A district court abuses its discretion if, in making the decision at issue, it applies the

---

[4]In a footnote, the district court remarked on the "contentious history" between the government and Barner, especially the fact that Barner had filed numerous motions challenging the charges against him, including a motion alleging prosecutorial misconduct in failing to disclose perjury by a witness, of which Barner alleged the government was aware. However, the court did not say what weight, if any, it gave to this contentious history in deciding the presumption of vindictiveness would apply.

8

incorrect legal standard or makes findings of fact that are clearly erroneous."

Jordan, 316 F.3d at 1249; see Maddox v. Elzie, 238 F.3d 437, 446 (D.C. Cir. 2001) (factual finding of actual vindictiveness reviewed for clear error, but legal question of whether prosecutorial vindictiveness doctrine applies reviewed de novo). Because this case presents the legal question of whether, on undisputed facts, a presumption of vindictiveness arises under the Supreme Court's case law, we must review the question presented de novo. [5]

## II.

"A prosecutor may seek a superseding indictment at any time prior to a trial on the merits," United States v. Cole, 755 F.2d 748, 757 (11th Cir. 1985); United States v. Del Vecchio, 707 F.2d 1214, 1216 (11th Cir. 1983), so long as the

---

[5]There is some confusion among and within the other circuits regarding the proper standard of review for the ultimate question of whether to apply the presumption of vindictiveness. Compare United States v. Wilson, 262 F.3d 305, 316 (4th Cir. 2001) ("We review the district court's order[] . . . establishing a presumption of vindictive prosecution de novo because we are determining the legal adequacy of the evidence to support such orders.") with United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (abuse of discretion standard) with United States v. Frega, 179 F.3d 793, 801 (9th Cir. 1999) (Ninth Circuit standard unsettled) and United States v. Campbell, 410 F.3d 456, 461 n.2 (8th Cir.) (collecting Eighth Circuit cases applying inconsistent standards of review: abuse of discretion, de novo, and clear error), cert. denied, 126 S. Ct. 492 and 126 S. Ct. 768 (2005).
    The disagreement is perhaps more apparent than real, for even under an abuse of discretion standard, errors of law receive no deference.

> Little turns, however, on whether we label review of this particular question abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law.

Koon v. United States, 518 U.S. 81, 100 (1996) (citation omitted).

9

purpose is not to harass the defendant, United States v. Edwards, 777 F.2d 644, 649 (11th Cir. 1985). As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute. Cole, 755 F.2d at 758; United States v. Spence, 719 F.2d 358, 361 (11th Cir. 1983). However, a superseding indictment adding new charges that increase the potential penalty would violate due process if the prosecutor obtained the new charges out of vindictiveness. Spence, 719 F.2d at 361. Vindictiveness in this context means the desire to punish a person for exercising his rights. United States v. Goodwin, 457 U.S. 368, 372 (1982).

A prosecutor's decision to seek heightened charges after a defendant successfully appeals his conviction for the same conduct is presumed to be vindictive. In Blackledge v. Perry, 417 U.S. 21 (1974), a convicted defendant had appealed and obtained a new trial; on retrial the prosecutor had increased the charge from misdemeanor to a felony. On habeas review, the Supreme Court held that when a prosecutor obtains heightened charges after a defendant successfully appeals his conviction, there is a "realistic likelihood of 'vindictiveness.'" Id. at 27. Due process requires that "such a potential for vindictiveness," id. at 28, should play no role in the appellate process. Consequently, the Supreme Court applied a

10

presumption of vindictiveness and held that the conviction on the felony charge violated due process.  Id. at 27-29.

While a prosecutor's decision to seek heightened charges after a successful post-trial appeal is enough to invoke a presumption of vindictiveness, "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context." United States v. Miller, 948 F.2d 631, 633 (10th Cir. 1991) (emphasis added); accord United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000) ("[I]n the context of pretrial plea negotiations vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from the defendant's exercise of a right.").  The difference in the applicability of the presumption is due to several cogent differences between post-trial and pre-trial situations.

First, before trial the defendant may not have actually exercised a protected right.  In Bordenkircher v. Hayes, 434 U.S. 357 (1978), a prosecutor threatened to bring an additional charge if the defendant did not plead guilty to the existing charge; the defendant did not so plead, and the prosecutor obtained a superseding indictment with the new charge.  Even though the prosecutor added the charge in an attempt to persuade the defendant not to exercise his right to stand trial, the Supreme Court held there was no "punishment or retaliation" and hence no

11

vindictiveness or due process violation in plea bargaining "so long as the accused [was] free to accept or reject the prosecution's offer." Id. at 363. Thus, the Court distinguished between the impermissible attempt to punish an already-accomplished exercise of appeal rights in Blackledge and the permissible attempt to persuade the defendant not to exercise his trial right in the future in Bordenkircher. See also United States v. Mays, 738 F.2d 1188, 1190 (11th Cir. 1984) (stating that applicability of presumption of vindictiveness depends on whether or not defendant has exercised a protected right).

But in United States v. Goodwin, 457 U.S. 368 (1982), the distinction between punishment and persuasion did not explain the lack of a presumption. There, the defendant had already exercised his rights to decline to plead guilty to the misdemeanor charge against him and to request a jury trial when the prosecutor had him indicted on a felony charge, for which he was ultimately convicted. Id. at 370-71. Even though the defendant contended he was being punished for exercising his right to a jury trial–it being too late for persuasion, since he had already made the request–the Court held still other aspects of the pre-trial situation made it inappropriate to apply a Blackledge-type presumption of vindictiveness. The Court distinguished between Blackledge, which involved a prosecutor's action after a conviction had been obtained and vacated, and Bordenkircher and Goodwin, which involved prosecutors' decisions to augment

12

the charges against the defendants before trial.  Id. at 376-81.  The Court said that the prosecutor who adds charges after a conviction has been obtained and vacated is likely to have had a personal stake in the first trial and to be tempted to engage in self-vindication.  Id. at 383.  Additionally, the Court held that there was an "institutional bias" against retrial of a "decided question."  Id.  In contrast, there is no such bias against according the defendant his right to trial by jury, and everyone expects a defendant to invoke numerous procedural rights before trial.  Id. at 381-383.  Moreover, changes in charging decisions are quite usual early in the proceedings when the prosecutor's view of the case may not have "crystallized," but are unusual and more surprising once the trial has begun.  Id. at 381.  In light of these differences between the post-trial situation in Blackledge and the pre-trial situation in Goodwin, the Court held there was not a "realistic likelihood of 'vindictiveness'" in Goodwin that would justify a presumption of vindictiveness.  Id. at 383-84.[6]

Even though no presumption of vindictiveness applied in Goodwin, the Court explicitly left open the possibility that the defendant could prove actual vindictiveness in a pre-trial situation, without the help of a presumption, and that

---

[6]Goodwin also stated that even when the presumption applies, it may be rebutted by objective evidence justifying the prosecutor's action.  457 U.S. at 376 n. 8.  Accord United States v. Taylor, 749 F.2d 1511, 1513 (11th Cir. 1985) (per curiam) ("The government may rebut this presumption of vindictiveness by offering 'objective proof which explains or justifies the prosecutor's decision.'") (quoting United States v. Spence, 719 F.2d 358, 362 (11th Cir. 1983)).

this would establish a due process violation.  Id. at 384.  Accord United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001).

A.

The government contends that Goodwin set forth a categorical rule that the presumption of vindictiveness does not apply to a prosecutor's decision to add charges based on the defendant's pre-trial exercise of rights.  Goodwin does indeed distinguish between pre- and post-trial exercise of rights, reasoning that aspects of the pre-trial situation make vindictiveness less likely and therefore militate against use of a presumption of vindictiveness.  Although those same factors will be present in other pre-trial cases, nothing in the language or rationale of Goodwin rules out the possibility that a case could present additional factors that would make it appropriate to use the presumption in a pre-trial setting.  Most courts have not read Goodwin as propounding a categorical rule against a presumption of prosecutorial vindictiveness in the pre-trial setting; instead, they have interpreted it as simply directing the courts to evaluate the "realistic likelihood of vindictiveness" in a particular factual situation, including a pre-trial situation, and to determine whether any facts make a presumption of vindictiveness proper.  E.g., Wilson, 262 F.3d at 317-20; United States v. Gallegos-Curiel, 681 F.2d 1164, 1167-69 (9th Cir. 1982) (Kennedy, J.); United States v. Wall, 37 F.3d 1443, 1448 (10th Cir. 1994); United States v. Krezdorn, 718 F.2d 1360, 1364-65 (5th Cir.

14

1983) (en banc). But see United States v. Bullis, 77 F.3d 1553, 1559 (7th Cir. 1996) (in pre-trial situation, presumption of vindictiveness not applicable and defendant must come forward with objective evidence of actual vindictiveness); 4 Wayne LaFave, Jerold Israel, Nancy King, Criminal Procedure § 13.7(c) ("It thus appears unlikely that the Blackledge prophylactic rule has any application whatsoever in a pretrial setting, though at least one court has concluded otherwise. . . .").

This court has neither adopted nor rejected a per se rule that the presumption of vindictiveness cannot apply in a pre-trial setting. In Mays we discussed Goodwin's analysis of the reasons against applying the presumption in pre-trial settings:

> The Goodwin court was reluctant to invoke a presumption of vindictiveness in the pre-trial context, inasmuch as it might inflexibly fetter the prosecutor's discretion. The Court recognized that acquisition of additional information or an increased appreciation of the facts previously available to the state might be an inducement to enhance the charges. 457 U.S. at 381, 102 S. Ct. at 2493, 73 L. Ed. 2d at 85 (1982). The Goodwin decision reaffirmed the prosecutorial discretion recognized in Bordenkircher, supra, and functioned to remove the affirmative defense of vindictive prosecution in "pre-trial skirmishes between defense counsel and prosecution." United States v. Mauricio, 685 F.2d 143, 147 (5th Cir.), cert. denied, 459 U.S. 1074, 103 S. Ct. 498, 74 L. Ed. 2d 638 (1982).

738 F.2d at 1190. Although this language suggests that the presumption should not apply in a pre-trial setting, it is dictum, not holding, for two reasons. First, as

15

we stated, "The case here does not fit neatly into either the post-conviction or pre-trial categories because the alleged intimidation occurred after a mistrial." Id. Therefore, we had no reason to adopt a pre-trial/ post-trial rule. Second, since the mistrial in Mays resulted from the jury's inability to reach a verdict, we concluded that there was no exercise of a protected right, and hence, no occasion for vindictiveness. The basic predicates for the presumption were missing, so we had no reason to decide the more refined question of whether those predicates would or would not support the presumption in the pre-trial setting. Moreover, the language in Mays most suggestive of a rule was a quotation from the Fifth Circuit case of United States v. Mauricio, 685 F.2d 143, 147 (5th Cir. 1982), but by the time Mays was decided, the Fifth Circuit had already rejected the idea of a per se rule based on the pre-trial/post-trial distinction. See United States v. Krezdorn, 718 F.2d 1360, 1364 (5th Cir. 1983) (en banc) ("The proper solution is not to be found by classifying prosecutorial decisions as changing or adding charges, as amending decisions already made, as covering the same basic conduct or spree of activity, or as being made pre- or post-trial."). Instead, the Fifth Circuit adopted a "totality of circumstances approach," in which it looks at all the facts of the case, rather than focusing on categorical distinctions such as pre-trial setting versus post-trial setting. Id. at 1364-65. This court has reserved judgment on whether to

16

adopt the "totality of circumstances" approach.  United States v. Taylor, 749 F.2d 1511, 1513 n. * (11th Cir. 1985) (per curiam).

It is not necessary for us to decide today whether the presumption can ever arise in a pre-trial setting, because even assuming compelling facts could justify a presumption in a pre-trial setting, such facts would have to form a realistic likelihood of vindictiveness, Goodwin, 457 U.S. at 383-84.  The factors cited by the district court and relied on by Barner do not present that likelihood.

B.

We must first determine whether Barner's exercise of pre-trial rights was followed by charges of increased severity.  Barner exercised protected rights when he successfully challenged the multiplicitous counts, and shortly after the dismissal the government obtained new charges.  The government does not dispute that there was a causal connection between the dismissal and the new indictment. However, the government contends that it had a legitimate interest in seeking to recharge the conduct that formed the basis of the dismissed counts.  The prosecutor said at the hearing before the district court, "What the government has done that's different is [the magistrate judge] said the gun counts can't refer back to conspiracy.  It's got to be linked to a crime of violence.  So I addressed that by putting in the crimes of violence."  The government's attempt to obtain a new indictment that would charge the conduct correctly is analogous to conduct we

17

held permissible in United States v. Taylor, 749 F.2d 1511, 1514 (11th Cir. 1985). There, a defendant was convicted of possession of cocaine with intent to distribute, but on appeal the charge was reduced to simple possession. The prosecutor then charged the defendant with possessing hashish, which was seized at the same time as the cocaine. The defendant argued that the new indictment was an attempt to punish him for winning the appeal of the first conviction, but this Circuit held:

> [T]he district court correctly concluded that the prosecutor's motivation for indicting Taylor on additional charges was to secure a conviction and sentence commensurate with his assessment of Taylor's criminal conduct and not to penalize him for taking an appeal.

Id. at 1514. Accord Krezdorn, 718 F.2d at 1362, 1365 (reversing district court's dismissal for vindictiveness; prosecutor entitled to add charge to address legal objection to conviction that was reversed); Paradise v. CCI Warden, 136 F.3d 331, 336 (2d Cir. 1998) ("A state's punitive motivation does not represent a constitutional violation, where as here, the state sought to punish not for the right exercised, but for the crime committed."). Likewise, in this case, the government's attempt to correct its earlier mistake and charge the conduct in a way that could

18

support a conviction does not show a desire to punish Barner for exercising his rights, but rather to punish him for the alleged felonious conduct.[7]

Barner also mentions the withdrawal of his guilty plea as an exercise of rights that preceded the new charges. However, this change of plea occurred more than a year before the government obtained the Fifth Superseding Indictment and nothing indicates that there was any causal relationship between the withdrawal of guilty plea and the new indictment. Even if there were such a relationship, in Bordenkircher, the prosecutor explicitly obtained a new indictment because the defendant refused to plead guilty, and the Supreme Court held that this did not violate due process. 434 U.S. at 365.

Barner's brief also makes passing references to the "contentious history of this case," Barner brief at p. 25, and lists his various pre-trial motions, including his motion to dismiss based upon prosecutorial misconduct for using perjured testimony before the grand jury, id. at 21-22. The mere fact that a defendant has made pre-trial motions is not sufficient to raise a presumption of prosecutorial vindictiveness, as Goodwin explained:

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence;

---

[7]We of course express no view as to whether Barner's conduct was properly charged under the Hobbs Act, since the question was never raised; Barner does not contend that he was charged without probable cause.

19

> to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

457 U.S. at 381. Even a pre-trial motion based on prosecutorial misconduct is not so unusual that it should engender a presumption, "applicable in all cases," Goodwin, 457 U.S. at 381, in which a defendant files such a motion.

Barner has adduced no special facts that would show that the pre-trial history of this case was so caustic that it could be expected to cause the prosecutor to behave improperly. In ruling on the prosecutorial misconduct motion, the district court adopted the magistrate judge's finding that Barner had not shown either that the grand jury testimony was perjured rather than mistaken or that the prosecutor had known of the mistake at the time of the testimony. Since Barner did not prevail on this motion, the government had no obvious reason for vindictive retribution.

Barner has not demonstrated that there was anything sufficiently unusual in the pretrial motions history of this case to distinguish it from Goodwin. Thus, assuming a presumption could arise in the pre-trial context, in addition to the threshold showing of exercise of rights followed by augmentation of charges,

20

Barner would have to identify other factors that would raise a realistic likelihood of vindictiveness.

## C.

The factors on which the district court relied were not legally cognizable evidence of vindictiveness. First, the district court in this case relied on comparisons between the punishment Barner faced in the Fifth Superseding Indictment and punishments offered and imposed pursuant to plea bargains, whereas Bordenkircher and Goodwin recognize such disparities as inherent in the plea-bargaining system. Reliance on this factor is therefore legal error.

The district court compared Barner's sentence under the initial guilty plea to the much greater possible sentence were he to be convicted on all counts of the Fifth Superseding Indictment. This comparison cannot support the presumption, for it is commonplace that a defendant can expect to get a more favorable sentence from a plea bargain than from proceeding to trial and losing; were it otherwise, few defendants would forego their right to a trial. Bordenkircher expressly approved of the process of plea bargaining, with the prosecutor entitled to offer a shorter sentence in return for a plea or to threaten a longer sentence if the defendant goes to trial. 434 U.S. at 363. We cannot hold that "one who declines to plead guilty with a recommended sentence acceptable to the Court should nevertheless be given the benefits of a bargain available to, but rejected by, him."

<u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988) (internal quotation marks omitted).

Similarly, the district court compared the sentences of Barner's co-defendants who plea-bargained as against Barner's possible sentence if he lost at trial. Again, the co-defendants who pleaded could expect to get favorable treatment from pleading, and this does not support a presumption of prosecutorial vindictiveness. The prosecutor stated at the hearing before the district court that the plea agreement which Barner entered and then rejected was comparable to the pleas offered the co-defendants who in fact pleaded and were sentenced in accordance with those agreements. Barner rejected the plea agreement because he wanted to go to trial, and his attorney was not authorized to enter another plea agreement. He is not now entitled to go to trial with some sort of assurance that if he loses he will not receive a longer sentence than those of his co-defendants who pleaded. The prosecutor stated at the district court hearing that if co-defendant Dale had gone to trial instead of pleading, he would have faced a sentence of 182 years.

The district court also erred in comparing Barner's possible sentence under the Fifth Superseding Indictment to the sentence he could have received under the Fourth Indictment after the multiplicitous gun charges had been dismissed. This assumes the government had no right to recharge the conduct in a way that would

22

survive a motion to dismiss; as we discussed at pages 17-18, <u>supra</u>, it was not improper for the government to try to correct its earlier error.

Another legal error resulted from the district court's reliance on prosecutorial conduct which may in fact have been punishable for other reasons, but which does not support a presumption of vindictive motivation without some further evidence of causation. The district court relied on the fact that the government reindicted Barner during the time obtained by a continuance granted in order to secure its witnesses. Although the rule is that the government may seek a superseding indictment at any time before trial, <u>Cole</u>, 755 F.2d at 757, the government is not entitled to mislead the court about the reasons for a requested continuance. Here, the district court stopped short of finding that the government had obtained the continuance by misrepresentation or half-truth. Nevertheless, even if the government had misled the court to obtain a continuance, that fact, without more, would not support a presumption that the government was motivated by vindictiveness in obtaining either the continuance or the superseding indictment. Though such misconduct would certainly be the basis for other remedial measures by the district court, it would not create a "reasonable likelihood of vindictiveness," <u>Goodwin</u>, 457 U.S. at 373, unless other facts linked the misconduct to a desire to punish the defendant for exercising his rights.

The final legal error was the district court's reliance on the fact that the government and Barner were not involved in plea negotiations. This factor cannot be the basis for a presumption of vindictiveness because the new charge in Goodwin also occurred "outside the context of plea negotiation," but this fact did not convince the Supreme Court that a presumption of vindictiveness was appropriate there. 457 U.S. at 382 n.15.

Since Barner has shown nothing more than his assertion of rights through pre-trial motions, followed by augmentation of the charges against him, there are no compelling factors which would justify invoking the presumption of prosecutorial vindictiveness. The district court erred in applying that presumption in this case.

III.

Goodwin left open the possibility that a defendant not entitled to such a presumption might nevertheless be able to make a showing of actual vindictiveness. Id. at 384. The district court in this case did not make findings of fact as to whether the prosecutors were actually motivated by the desire to punish Barner for the exercise of his rights and whether the Fifth Superseding Indictment was the result of such animus. See Wilson, 262 F.3d at 314 (elements of prosecutorial vindictiveness are animus plus causation). While the district court expressed some dubiousness concerning the prosecutors' claim that they only

discovered shortly before trial that they could solve the multiplicity problem by bringing Hobbs Act charges, it did not positively reject this claim. Barner is entitled to a decision on the issue of actual vindictiveness and so we remand for findings of fact.

The district court's dismissal of the Fifth Superseding Indictment is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.