[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14687
Non-Argument Calendar

_____

D. C. Docket No. 07-60046-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NELSON JOSE DIAZ,
a.k.a. Frankie Coris,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 30, 2008)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Nelson Diaz appeals his conviction for making false statements in applying for a passport, in violation of 18 U.S.C. § 1542.  On appeal, Diaz asserts that the pre-trial ruling allowing use of a Florida driver's license only permitted the evidence to be used to show that the license had been presented during the application for the passport.  Diaz argues that the evidence of how he obtained the license was irrelevant and improper character evidence.  Diaz also contends that Fed. R. Evid. 404(b) was violated because the government did not give him prior notice of the evidence.  Diaz posits that the way he acquired the Florida driver's license is unrelated to his application for a passport four years later.  Finally, Diaz argues that the district court must give a limiting instruction whenever the prosecution offers evidence of prior bad acts.

After careful review of the record and briefs, we conclude that the district court did not abuse its discretion in admitting evidence that Diaz had a false driver's license because that evidence was inextricably intertwined with evidence of  false statements in the passport application.  Moreover, any error in admitting evidence of Diaz's fraudulent acquisition of a Florida driver's license was harmless.  The district court did not abuse its discretion by refusing to give the requested jury instruction that Diaz was not on trial for obtaining the false license

because it did give an instruction that Diaz was only on trial for the offense designated in the indictment. Accordingly, we AFFIRM.

## I. BACKGROUND

Nelson Diaz was indicted on one count of making a false statement on a passport application in violation of 18 U.S.C. § 1542. R1-1. In a preliminary hearing immediately before trial, Diaz moved to exclude evidence that he had fraudulently acquired a Florida driver's license because he was not charged with that crime and the evidence was therefore improper character evidence. R2 at 9-10. Diaz made this motion based on photocopies of the Florida driver's license he received from the government in pre-trial discovery. Id. Diaz asserted that, to the extent the evidence was admissible under Fed. R. Evid. 404(b), the government had not provided notice that it intended to present evidence of the prior bad act. Id. at 10-11. The government responded that the evidence regarding the fraudulent driver's license was inextricably intertwined with the evidence of the charged crime, making a false statement on a passport application. Id. at 11-12. The government explained that the evidence that the defendant presented the driver's license to apply for the passport and that the evidence showing that information was false would necessarily show that the driver's license contained false information. Id. at 14. The district court stated:

3

> That's about the best inextricably intertwined evidence argument I've heard. Usually it can be separated, but I have to tell you in this case I concur with the government's argument, and so your objection is overruled.

Id. In response, Diaz requested the judge reserve ruling on the possibility of a limiting instruction. Id. The district court stated, "Absolutely. If at any time you want to request an instruction, limiting or otherwise, simply present that matter to me and we'll take a look at it and I will make a decision." Id. at 14-15.

During trial, Diaz's ex-wife, Zulma Coris ("Zulma"), testified that her brother, Frankie Coris ("Frankie"), was born in Puerto Rico and died in December of 1997, R3 at 192-93, and Diaz was born in Venezuela, Id. at 197-98. In 1993, she gave Frankie's birth certificate to Diaz so that he could obtain a Florida driver's license. Id. at 198-199. Diaz objected that the evidence was irrelevant, and the district court overruled the objection. Id. at 199. Zulma testified that Diaz took Frankie's birth certificate, went to the driver's license center at Opa-Locka, and obtained a Florida driver's license. Id. at 199-201. Diaz did not object to the testimony that he had obtained a Florida license. Id.

Zulma testified that, in 1997, she allowed Diaz to use Frankie's birth certificate to apply for a passport. Id. at 202. She also filled out the application for Diaz, using Frankie's identifying information. Id. at 202-205. Zulma observed Diaz sign the passport application in the post office. Id. at 206-207. When the

4

government moved to admit a certified copy of the driver's license into evidence, Diaz made a hearsay objection, which was overruled by the district court. Id. at 217-219. At no time during Zulma's direct examination did Diaz request a limiting instruction. On cross-examination, Zulma admitted that she had seen a Florida driver's license with Serge Cruz's picture and Frankie's information, but denied that she had provided any assistance to help Cruz obtain false documents. Id. at 239.

Bekelda Coris ("Bekelda") testified that she was married to Frankie and that he died on 20 December 1997. Id. at 275. She testified that during the 1990s, she and Frankie lived in Texas and Frankie had a Texas driver's license. Id. at 275-76. Bekelda testified that Zulma was her sister-in-law and had visited Texas with Diaz. Id. at 276-77. Bekelda identified Diaz as the person pictured in the passport application under Frankie's name. Id. at 277. On cross-examination, Bekelda testified that the signature on the passport application was not Frankie's signature. Id. at 278. She also admitted she had no personal knowledge of events surrounding the application for the passport. Id.

Jessica Coris ("Jessica") testified that she is Bekelda and Frankie's daughter. Id. at 280. She visited Zulma in Florida from time to time and knew Diaz when he was married to Zulma. Id. at 280-81. Jessica identified Diaz as the person pictured

in the passport application under Frankie's name.  Id. at 282.  Jessica identified

Diaz as the person pictured in the Florida driver's license under Frankie's name.

Id.  Jessica admitted she had no personal knowledge of events surrounding the

application for the passport.  Id.  On cross-examination, Jessica described a

meeting with investigators that focused on Serge Cruz and did not discuss Diaz.

Id. at 283.  Jessica also recognized the handwriting on the passport application as

belonging to Zulma.  Id. at 284.  On redirect, Jessica testified that she never saw

Serge Cruz with Zulma and did not know his relationship with Zulma.  Id. at 284-

85.

Lillian Lees, a former passport clerk for the post office, testified that the

process for applying for a passport included the presentation of an application and

proof of identification.  Id. at 179-185.  She also testified that she was the examiner

for the passport application made in Frankie's name.  Id. at 285-287.  Lees testified

that two passport photographs are required as part of the passport application

process.  Id. at 287.  Lees stated that the applicant provided identification with

Frankie's name and swore the information in the application was correct.  Id. at

287-288.  The person who gave her the application used a driver's license with

Frankie's name.  Id. at 289.  Lees testified that the applicant who did those things

matched the photographs included as part of the passport application process.  Id.

6

On cross-examination, Lees admitted she had no independent recollection of the application and was simply describing the application process. Id. at 291-292. Louis Cordoba testified that a passport was issued for the application in Frankie's name. Id. at 303-306. Carl Reichmuth, a former customs inspector, testified that during his duties on the Canadian border in 1997, he observed someone claiming to be named Frankie Coris cross the border with someone named Zulma Coris into the United States using a passport with the same number as the one at issue in the case. Id. at 308-312. On cross-examination, Reichmuth admitted he had no independent recollection and could not identify the person who claimed to be Frankie. Id. at 318.

Later in the trial, the government proposed offering evidence detailing the process of acquiring a Florida driver's license, and Diaz objected that the driver's license was becoming a focal point of the trial. Id. at 324-25. Diaz asserted that the government had not provided notice of intent to use 404(b) evidence. Id. at 325-26. In response, the district court stated that the license was a focal point "because [the license] was presented to obtain a passport." Id. at 326. Therefore, the district court overruled the objection.

Christine Gracey, an investigator with the Florida Department of Highway Safety and Motor Vehicles - Division of Driver's Licenses, testified about the

process for obtaining a first license and subsequent licenses. Id. at 331-32. Gracey authenticated a printout of driving records in Diaz's name, and the records were admitted into evidence over Diaz's objection. Id. at 334-36. Included in the records were photographs of Diaz taken at different times when he came to renew his driver's license. Id. at 336. Gracey also verified records of the driver's license in Frankie's name. Id. at 337-38. On cross-examination, Gracey admitted she had no personal knowledge of how the driver's license in Frankie's name was obtained. Id. at 339. Gracey also admitted that any person who claimed to be Frankie, claimed to have lost that person's license, and who could answer questions based on the driving records would have been able to get a new Florida driver's license in Frankie's name. Id. at 344-45.

During the jury charge conference, Diaz requested that the district court instruct the jury that Diaz was not on trial for any fraudulent acts in obtaining the Florida driver's license. Id. at 366. The district court stated, "I give an instruction which covers that point, which indicates that the defendant is on trial only for the offenses charged in the indictment, and so that covers that point." Id. at 366-367. During the jury charge, in relevant part, the district court instructed the jury:

> I caution you, members of the jury, that you are here to determine from the evidence in this case whether the defendant is guilty or not guilty. The defendant is on trial only for the specific offense alleged in the indictment.

8

Id. at 410.  Diaz was found guilty, R4 at 430, and sentenced to time served, R5 at 5.

## II. DISCUSSION

We review admission of prior bad acts evidence for abuse of discretion. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008).  We review refusal to give a requested jury instruction for abuse of discretion.  United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001).  A district court abuses its discretion when it applies an incorrect legal standard or makes findings of facts that are clearly erroneous.  United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006).  When an issue was not raised before the district court, we review for plain error.  United States v. Heath, 419 F.3d 1312, 1314 (11th Cir. 2005).  Plain error exists if there was "(1) error, (2) that is plain, and (3) affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotations and citation omitted).  We will only reverse a criminal conviction based on improperly admitted 404(b) evidence if the error is not harmless.  United States v. Chavez, 204

F.3d 1305, 1317 (11th Cir. 2000) (affirming conviction despite Rule 404(b) error when other evidence against the defendant was overwhelming).

**A. Whether the district court abused its discretion in admitting evidence of a prior bad act of the defendant when it found the evidence was inextricably intertwined with evidence of the charged crime**

Diaz asserts that the pre-trial ruling allowing use of the Florida driver's license only permitted the evidence to be used to show that the license had been presented during the application for the passport. Diaz argues that the evidence of how he obtained the license was irrelevant and improper character evidence. Diaz also contends that Fed. R. Evid. 404(b) was violated because the government did not give him prior notice of the evidence. Diaz argues that the way he acquired the Florida driver's license is unrelated to his application for a passport four years later. Additionally, Diaz asserts that the government has not shown good cause for its failure to provide pre-trial notice. Diaz urges that the district court must give a limiting instruction whenever the prosecution offers evidence of prior bad acts, although Diaz concedes that he did not request a limiting instruction while Zulma was testifying.

Evidence of prior bad acts may be admitted only for purposes other than proof of bad character. Fed. R. Evid. 404(b). "The rule is one of inclusion which allows [prior bad acts] evidence unless it tends to prove only criminal propensity.

10

The list [of permissible uses of prior bad acts evidence] provided by the rule is not exhaustive . . . ." United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989). Generally, prior bad acts evidence is subject to a three-part test: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find the defendant committed the act. Ellisor, 522 F.3d at 1267. When evidence of prior bad acts is inextricably intertwined with evidence of the charged crime, the evidence of the prior bad acts is admissible as intrinsic, not extrinsic evidence. United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992); See United States v. Thomas, 242 F.3d 1028, 1032-33 (11th Cir. 2001) (noting that the policies underlying Fed. R. Evid. 404(b) do not apply to inextricably intertwined evidence).

If the defendant in a criminal prosecution requests it, the prosecution "shall provide reasonable notice in advance of trial or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such [prior bad acts] evidence it intends to introduce at trial." Fed. R. Evid. 404(b). However, this notice provision does not apply when the prior bad acts evidence is intrinsic evidence. See Fed. R. Evid. 404(b) advisory committee's notes to 1991 amendments; see also United States v. Williford, 764 F.2d 1493, 1498 (11th Cir.

11

1985) (noting that evidence of a prior bad act "arising from the same series of transactions as that charged is not an extrinsic offense within Rule 404(b).").

Evidence of criminal activity other than the offense charged is not extrinsic when the evidence is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." Ellisor, 522 F.3d at 1269 (quotation omitted). The intertwined evidence is admissible if it "[is] linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime or is necessary to complete the story of the crime for the jury." Williford, 764 F.2d at 1499; see United States v. Diaz, 190 F.3d 1247, 1251, 1258-59 (11th Cir. 1999) (holding evidence of 1986 arrest warrant was inextricably intertwined with drug conspiracy dating from 1985-1995). Even if the evidence meets this test, it may still be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. Fortenberry, 971 F.2d at 721 (citing Fed. R. Evid. 403). When a defendant requests a limiting instruction on the use of 404(b) evidence, the district court errs by denying the request. United States v. Gonzalez, 975 F.2d 1514, 1517 (11th Cir. 1992). A district court does not plainly err in omitting a

limiting instruction when one is not requested. United States v. Smith, 459 F.3d

1276, 1297 (11th Cir. 2006), Ellisor, 522 F.3d at 1268 n.16.

In Ellisor, the defendant was charged with mail fraud relating to a scheme to

sell tickets for a Christmas show the defendant asserted he was organizing at the

Doubletree Hotel. 522 F.3d at 1259-1262. The government presented evidence

that the defendant did not pay his room bill at the Doubletree Hotel. Id. at 1269.

Although the defendant was not charged with a crime for the non-payment, we

explained that the evidence was intrinsic and admissible because "the unpaid bill

was a necessary part of the evidence relating to the charged offense . . . ."

Id. at 1269-70.

Diaz's claim that the district court abused its discretion in admitting

evidence of his fraudulent driver's license and how he obtained the license is

without merit. The evidence at trial showed that Diaz used the false driver's

license to obtain a passport. R3 at 289. The driver's license itself is inextricably

intertwined with the charged crime because the evidence showed that Diaz applied

for a passport, the name on the passport application was Frankie Coris, and that

Diaz is not named Frankie Coris. R3 at 197-207. This evidence inherently showed

that the driver's license, under the name Frankie Coris, used by Diaz to apply for

the passport was also false. In Ellisor, we held that evidence that the defendant had

13

not paid his hotel bill was inextricably intertwined with the evidence that the defendant committed mail fraud with a fraudulent scheme to sell tickets to a Christmas show at the same hotel. 522 F.3d at 1269-70. Here, the district court's conclusion that the existence of the fraudulent driver's license was inextricably intertwined with the fraudulent act of using the driver's license to apply for a passport was not an abuse of discretion.

Diaz's claim that the evidence of how he obtained the fraudulent driver's license should have been excluded is without merit. We have held that the prior bad acts evidence must be "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime." Williford, 764 F.2d at 1499; cf. Diaz, 190 F.3d at 1251, 1258-59 (holding a 1986 arrest warrant was inextricably intertwined with a drug conspiracy from 1985-1995). Diaz's fraudulent application for a driver's license in 1993 is somewhat remote in time from his fraudulent application for a passport in 1997, but the driver's license does relate to the fraudulent passport application because Diaz used the license to obtain the passport. Further, the description of the driver's license application is a natural part of the account of the fraudulent passport application.

Even if the driver's license application process is not inextricably intertwined with the fraudulent passport application, we would not reverse the

14

conviction. The district court did not explicitly address whether the evidence met the criteria of Rule 404(b), but even if the evidence should have been excluded, the error is harmless. In this case, Zulma testified that Diaz applied for a passport in Frankie's name using a driver's license with Frankie's name and Frankie's birth certificate. R3 at 202-207. Lees testified that a passport photograph is required as part of the application process, id. at 287, and two witnesses identified Diaz as the person pictured in those photographs, id. at 277, 282. The evidence showed that the normal application process was followed, id. at 179-85, 285-87, 289, that a passport issued, id. at 303-306, and that the same passport in Frankie's name was actually used, id. at 308-12. Any error in admitting the evidence was harmless considering the overwhelming evidence that Diaz committed passport fraud by applying for a passport using Frankie's name.

To the extent that Diaz is arguing that there should have been a limiting instruction given while Zulma was testifying, review is for plain error because he did not request an instruction at that time, as he concedes. The lack of a limiting instruction is not plain error when not requested by the defendant. Smith, 459 F.3d at 1297; Ellisor, 522 F.3d at 1268 n.16.

Diaz's claim that he received inadequate notice under Fed. R. Evid. 404(b) is without merit. See Fed. R. Evid. 404(b) advisory committee's notes to 1991

15

amendments (noting that notice provision is inapplicable to intrinsic prior bad acts evidence). In any event, the record does not contain a clear request from Diaz for notice, which is required to trigger the duty of the prosecution to give notice. Fed. R. Evid. 404(b). If a request is assumed, the pre-trial discovery provided by the government, such as the photocopy of the driver's license, R2 at 9-10, was reasonably timely and reasonably communicated the general nature of the government's prior bad acts evidence. In any case, Diaz's description of the prior bad acts evidence in his pre-trial motion to exclude the evidence shows that he had actual knowledge of the substance of the evidence. See id. at 9-12. The district court did not abuse its discretion in admitting the evidence related to the fraudulent Florida driver's license because that evidence was intertwined with the evidence of the false statements made in applying for the passport.

B.     **Whether the district court abused its discretion in refusing to give a requested jury instruction when it determined the requested instruction was substantially covered by other jury instructions**

On appeal, Diaz argues the district court abused its discretion by failing to give his requested jury instruction. Diaz asserts that the instruction to the jury that he was only on trial for the charge in the indictment is not the same as his requested jury instruction.

16

We find reversible error in the refusal to give a requested jury instruction only if "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008).

Diaz's claim that the district court erred in refusing to instruct the jury regarding the driver's license evidence is without merit. The district court did not abuse its discretion in refusing to give Diaz's requested jury instruction that Diaz was not charged with fraudulently acquiring a Florida driver's license because its instructions correctly and substantially communicated to the jury that Diaz was only on trial for the crime charged in the indictment. The district court instructed the jury that Diaz was only on trial for "the specific offense alleged in the indictment," id. at 410, which communicated to the jury that Diaz was on trial for false statements in his passport application, not conduct related to his acquisition of the Florida driver's license.

## III. CONCLUSION

For the reasons set out above, the district court did not abuse its discretion in admitting evidence that Diaz obtained and used a false driver's license because that evidence was inextricably intertwined with evidence of false statements in his

17

passport application. Moreover, the district court did not abuse its discretion by refusing to give Diaz's requested jury instruction because it gave an instruction that admonished the jury that he was on trial only for the passport offense designated in the indictment.

**AFFIRMED**