[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16282
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 8, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-60232-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUDIE WATSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 8, 2010)

Before EDMONDSON, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

Audie Watson appeals his convictions and sentences for: conspiracy to

commit mail fraud and to encourage foreign nationals to remain in the United States unlawfully, in violation of 18 U.S.C. § 371; three counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; five counts of engaging in financial transactions using criminally derived property, in violation of 18 U.S.C. §§ 1957 and 2; and one count of encouraging foreign nationals to unlawfully remain in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(i).

## I.

First, Watson argues that the district court erred by denying his motion to dismiss the superseding indictment based upon prosecutorial vindictiveness. We review a district court's denial of a motion to dismiss an indictment based upon prosecutorial misconduct only for an abuse of discretion. United States v. Jones, 601 F.3d 1247, 1260 (11th Cir. 2010) (citing United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006)). We review de novo "the legal question of whether a presumption of vindictiveness arises from the facts of the case." Id.

"As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." Barner, 441 F.3d at 1315. Where a presumption of vindictiveness does not apply, the defendant has the burden of demonstrating actual vindictiveness. Id. at 1317, 1322. Furthermore, this Court

2

recognizes a distinction between "instances in which the prosecutor substitutes a more serious charge for the original charge and those in which new charges are based on independent acts." United States v. Jones, 601 F.3d 1247, 1261 n.5 (11th Cir. 2010). When a prosecutor brings additional charges for independent acts, even if they are part of "the same spree of activity," a defendant must show proof of actual vindictiveness. United States v. Taylor, 749 F.2d 1511, 1513 (11th Cir.1985) (citation and internal quotation marks omitted).

In this case, the government obtained a superseding indictment against Watson before trial and after Watson declined a plea offer. These facts, without more, do not give rise to a presumption of vindictiveness. As the Supreme Court explained in Bordenkircher v. Hayes, 434 U.S. 357, 363–65, 98 S.Ct. 663 (1978), a prosecutor does not violate a defendant's constitutional rights merely by obtaining a superseding indictment after the defendant has rejected a plea offer. Moreover, the additional charges contained in the superseding indictment were for independent acts within the same spree of activity, and Watson has not presented any evidence of actual vindictiveness. Because Watson failed to establish that the prosecutor had a vindictive motive, the district court did not abuse its discretion by denying Watson's motion to dismiss the superseding indictment.

II.

Second, Watson contends that the district court should have suppressed evidence seized during a search of his residence because the warrant authorizing the search was not supported by probable cause. "In reviewing a district court's denial of a motion to suppress, this court examines the district court's findings of fact for clear error and its application of the law to those facts de novo." United States v. Tate, 586 F.3d 936, 942 (11th Cir. 2009). "[P]robable cause to search a residence exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 942–43 (internal citations omitted). An affidavit in support of a search warrant for a suspect's residence "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).

The search warrant for Watson's residence was supported by probable cause. The warrant affidavit explained that Watson sold memberships in the Pembina Nation Little Shell Band ("Pembina Nation") to unlawful aliens after falsely representing that tribal membership would allow the aliens to reside and work in the United States. Therefore, there was probable cause to believe that Watson had committed criminal acts. The affadavit also established a connection between the

4

defendant, his residence, and the suspected criminal activity. Watson and one of his employees told undercover agents that all of the files related to his business, Universal Service Dedicated to God, Inc., were located in Watson's residence, and Florida records listed Watson's residence as the corporate address for Universal Service. Because the search warrant for Watson's residence was supported by probable cause, the district court properly denied Watson's motion to suppress.

III.

Next, Watson argues that the evidence introduced at trial was insufficient to support his convictions, or, more specifically, that the government failed to prove that he acted with criminal intent. "We review de novo whether sufficient evidence supports a conviction, resolving all reasonable inferences in favor of the verdict." United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). "We will not reverse unless no reasonable trier of fact could find guilt beyond a reasonable doubt." Id.

When a criminal defendant testifies in his own defense, the jury is entitled to reject the defendant's testimony and to consider it as substantive evidence of his guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). "Where some corroborative evidence of guilt exists for the charged offense (as is true in this case) and the defendant takes the stand in [his] own defense, the Defendant's

5

testimony, denying guilt, may establish, by itself, elements of the offense. This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge." United States v. Williams, 390 F.3d 1319, 1326 (11th Cir. 2004) (citation and quotation marks omitted).

The evidence was sufficient for the jury to conclude beyond a reasonable doubt that Watson acted with criminal intent, that he encouraged unlawful aliens to remain in the United States, that he knew the money received by Universal Service from its clients constituted criminally derived proceeds, and that he knowingly engaged in a scheme to defraud using the United States mail system. Watson knew that the Pembina Nation documents were routinely not accepted, which was evidenced both by his letters to Immigration and Customs Enforcement acknowledging that an 1863 treaty only applied to those who were then members of the tribe and their lineal descendants, as well as the testimony of two of his clients, illegal aliens named Lauriston and Demelus, who complained to Watson that their documents were not accepted. Federal agents also testified that Watson assisted an undercover agent in procuring Pembina Nation documents for workers lacking "papers," and that Watson admitted in an interview that the people he sponsored for tribal membership were in the United States illegally. Watson told

the illegal aliens who sought out his services that they would be able to live and work lawfully in the United States if they joined the Pembina Nation, even though he knew that the Pembina Nation documents were not recognized by the federal government or many employers. Thus, a reasonable jury could have concluded that Watson intentionally misled the clients of Universal Service when he told them that adoption by the Pembina Nation would allow them to live and work in the United States. Finally, the prosecution submitted evidence that Watson used the mail system in furtherance of his scheme to defraud by mailing Universal Service materials to clients and letters to ICE on behalf of clients. Accordingly, the evidence introduced at trial was sufficient to support all of Watson's convictions.

IV.

Watson also contends that the district court erred by declining to give his requested jury instructions. We review a district court's refusal to give a requested jury instruction only for an abuse of discretion. United States v. Culver, 598 F.3d 740, 751 (11th Cir. 2010). A court abuses its discretion only if "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." *Id.* (citations and quotation marks omitted).

7

The district court did not abuse its discretion by declining to give Watson's proposed instructions. Watson's first proposed instruction concerning a tribe's ability to adopt new members was substantially covered by the court's instruction that a tribe has the right to determine its own membership, just as any other corporation or association does. The district court also rejected Watson's third proposed instruction concerning the ability of a tribe to determine its own substantive law. The court's refusal to give either proposed instruction did not impede Watson's ability to present an effective defense because he was still able to argue to the jury that he legitimately believed that he had the authority to solicit new members on behalf of the Pembina Nation and that membership in the tribe would allow unlawful aliens to reside and work in the United States.

V.

Watson also raises several challenges to his sentences.

A.

First, Watson contends that the district court violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), by enhancing his sentence based upon facts not found by the jury. We addressed a district court's ability to make factual findings at sentencing in United

8

States v. Rodriguez, 398 F.3d 1291 (11th Cir. 2005), noting that Booker does not prohibit a district court from making extra-verdict factual findings at sentencing by a preponderance of the evidence, provided that the court treats the resulting guideline range as advisory. Id. at 1301. That decision and others foreclose Watson's arguments concerning Apprendi, Blakely, and Booker.

B.

Next, Watson contends that the district court clearly erred by applying two sentencing enhancements based on extra-verdict factual findings concering the number of victims of his fraud scheme and the number of illegal aliens that he harbored. We review a district court's factual findings under the sentencing guidelines only for clear error. United States v. De La Cruz Suarez, 601 F.3d 1202, 1220–21 (11th Cir. 2010).

First, Watson challenges the district court's sentencing enhancement for a fraud offense involving 250 or more victims. Section 2B1.1(b)(2)(C) of the sentencing guidelines states that a six-level sentencing enhancement should be imposed if a defendant's fraud offense involved 250 or more victims. A "victim" under Section 2B1.1 is "any person who sustained any part of the actual loss" attributable to the fraud. U.S.S.G. § 2B1.1 cmt. n.1.

The evidence showed that Universal Service charged $1,500 for each person

who completed a membership application and that Universal Service had earned and deposited approximately $1,126,078[1] based on the fees it had collected with applications as part of the fraud scheme. Dividing that amount by $1,500 per client yields a total of over 750 victims, a total that is well over the threshold. Federal agents also recovered over 600 client files from Watson's residence, most of which contained information from applicants who were natives of South American countries, and Watson admitted that he had sponsored over 2,000 illegal aliens for membership in the Pembina Nation. Therefore, the district court did not clearly err in finding that Watson perpetrated his fraud on 250 or more victims.

Watson also challenges the district court's finding that his offense warranted a sentencing enhancement because it involved the harboring of 100 or more unlawful aliens. Section 2L1.1(b)(2)(C) of the sentencing guidlines provides that a defendant's base offense level should be increased by nine levels if the offense involved the smuggling, transporting, or harboring of 100 or more unlawful aliens.

The district court did not clearly err by concluding that Watson harbored over 100 unlawful aliens based on his own testimony that he sponsored over 2,000 unlawful aliens for membership in the Pembina Nation, thereby encouraging them

---

[1] Watson takes issue with calculating the number of victims based on the total amount of money earned by Universal Service because there was evidence that he issued refunds to some of his clients. However, the $1,126,078 figure is the amount of the deposits into the two accounts belonging to Universal Service minus any identifiable refunds.

to reside in the United States when he knew that their adoption by the Pembina Nation would not affect their status as unlawful aliens. The district court's conclusion was further supported by both the calculation that the fraud involved well over 250 victims and the fact that agents found over 600 client files in Watson's residence, most of which were from applicants originating from South American countries.

## C.

Watson also argues that his sentences are procedurally unreasonable because the district court did not adequately consider the 18 U.S.C. § 3553(a) factors or explain why it rejected his arguments for a downward variance. When reviewing sentencing decisions for abuse of discretion, we utilize a two-step process. "First, we review to 'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007)). The district court need not specifically discuss each § 3553(a) factor, provided that the

court acknowledges that it considered all of the factors. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

If the district court's sentencing decision is procedurally sound, we move on to the second step where we must determine whether the sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors. Gall, 552 U.S. at 51, 128 S.Ct. at 597. The district court's sentencing decision will be set aside only if we determine, "after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." United States v. Irey, 2010 WL 2949465, at *26 (11th Cir. 2010). "Although we do not automatically presume a sentence within the guidelines range is reasonable, we 'ordinarily . . . expect a sentence within the Guidelines range to be reasonable.'" United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (quoting Talley, 431 F.3d at 788)).

Here, the district court did not commit any procedural errors in sentencing Watson. The district court was not required to specifically respond to Watson's arguments for a downward variance, and the court indicated that it had considered the parties' arguments as well as the § 3553(a) factors in determining an appropriate sentence. The court explained that a sentence at the low end of the guideline range was sufficient to provide adequate punishment and to deter future criminal conduct. The court's explanation showed that it considered Watson's

12

arguments and the statutory factors, and that the court had a reasoned basis for the sentence it elected to impose.

D.

Finally, Watson asserts that his sentence is substantively unreasonable. Since Watson's total sentence is at the low end of his advisory guideline range and well below the statutory maximum, we ordinarily expect it to be reasonable, and there is no evidence to suggest that the sentence "truly is unreasonable." Irey, 2010 WL 2949465, at *26. Therefore, the district court did not abuse its discretion by sentencing Watson to a total term of 168 months imprisonment.

**AFFIRMED.**