[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15090

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20478-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY RAFFERTY,
a.k.a. Tim Rafferty,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 16, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and EVANS,* District Judge.

EVANS, District Judge:

_____

*Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Timothy Rafferty ("Rafferty") appeals his convictions and sentence on counts of conspiracy to commit securities fraud, conspiracy to commit mail fraud and wire fraud, and two substantive counts of wire fraud. Rafferty raises numerous issues on appeal challenging evidentiary rulings, legal rulings, his convictions, and the sentence imposed. After oral argument and a careful review of the briefs and record in this case, we affirm.

**BACKGROUND**

Rafferty was charged in a second superseding indictment with conspiracy to engage in securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff(a) and 18 U.S.C. § 371 (Count 1), conspiracy to commit mail fraud and wire fraud, 18 U.S.C. § 1349 (Count 2), and wire fraud, 18 U.S.C. § 1343 (Counts 3 and 4). He was convicted on April 10, 2006 by a jury on all Counts. He was sentenced on September 12, 2006 to 126 months' imprisonment, followed by three years of supervised release. The sentence included a requirement of $1,234,880 in restitution and forfeiture of $1,198,450 in certain property. Post-trial motions for new trial on Counts 1 and 2 and for judgment of acquittal on Counts 3 and 4 were denied. Rafferty timely filed a notice of appeal.

Taking the facts in the light favorable to the verdict, the evidence at trial[1] showed that Rafferty began his association with Uncommon Media Group, Inc. ("UMDA") in 2003 when its CEO Lawrence Gallo ("Gallo") persuaded Rafferty to join his operations. Rafferty worked at UMDA on a daily basis, shared an office with CEO Gallo and spoke with potential investors, but was neither a corporate officer nor a salaried employee of UMDA. Rafferty held himself out to be both a major investor in and consultant to UMDA.

Rafferty established a business relationship with Frederick Hornick, an investor in Colorado. Hornick served as a recruiter of other investors and as Rafferty's messenger to them regarding directions for wire transfer of investment funds. The government presented evidence that Rafferty and Gallo knowingly misrepresented a number of material facts to these investors related to the business prospects of UMDA; taken together, these statements misrepresented the value and liquidity of the UMDA shares. The evidence also showed that Rafferty did not reveal, to either the investors or Gallo, past legal judgments against him: specifically, a 1991 conviction for securities fraud, a 1993 injunction against further acts of securities fraud, and numerous civil suit judgments. A large

_____

[1]The testimony of over thirty witnesses along with hundreds of exhibits, including eleven summary charts (discussed infra), was presented at trial.

3

number of individuals who dealt with either Rafferty, Hornick, or both purchased shares of UMDA and/or other companies. Such shares were either never delivered to these individuals or, if they were delivered, turned out to be worthless. At trial, the government argued that Rafferty defrauded these investors. Also, the government's trial evidence showed that Rafferty, either directly or via Hornick, caused the investors to wire their money to accounts controlled by Rafferty rather than to UMDA.

In July 2004, the government filed a sealed indictment charging Timothy Rafferty and Lawrence Gallo with conspiracy to commit securities fraud and conspiracy to commit mail fraud and wire fraud. The government offered both defendants a plea agreement. Gallo pled guilty, but Rafferty did not. The grand jury returned the first superseding indictment against Rafferty alone on June 2, 2005, adding substantive wire fraud counts and extending the time period of the alleged conspiracy. On September 13, 2005, the district court held a hearing to consider Rafferty's motion to dismiss the first superseding indictment on grounds of vindictive prosecution. This motion was denied. In response to questioning by the district court on the specificity of the forfeiture section of the first superseding indictment, the government brought and ultimately tried Rafferty on a second superseding indictment.

At trial, the district court ruled that the 1991 conviction, the 1993 injunction and the two 2003 civil judgments, in Georgia and New York, specified in the second superseding indictment were admissible as intrinsic evidence. Regarding the civil judgments not specified in the second superseding indictment, the court ruled that testimony demonstrating that Rafferty secretly diverted UMDA investor funds to pay his debts and attorneys fees arising from these civil cases was inextricably intertwined. Limited evidence that Rafferty's conduct underlying those civil cases was similar to the facts in the instant case was admitted under Federal Rule of Evidence 404(b), but most of the evidence related to civil judgments not specified in the second superseding indictment was not admitted.

In preparation for trial, the government enlisted FBI financial analyst Gail Winter to review documents from various third-party bank accounts controlled by Rafferty, along with other records. Winter prepared eleven summary charts tracking the sources and destinations of money through these various accounts. Winter's charts traced $998,921 in investor funds to these accounts and showed that UMDA did not receive any of this investor money. The eleven summary charts, along with the bank records, were admitted into evidence at trial. Altogether, the voluminous account records, Winter's summary charts, and Winter's and others' trial testimony supported the government's theory that

5

Rafferty funneled investor money through these accounts and used the funds to pay personal expenses, including, inter alia, mortgage and car payments, repayment of civil judgments and associated attorneys' fees.

Over the course of two sentencing hearings, the district court proceeded to determine the amount of loss by tracing and aggregating the investor funds deposited into Rafferty's various bank accounts. The district court emphasized that it was only including funds that were clearly invested in UMDA, not other companies, as a result of Rafferty's solicitation, and it deducted significant amounts of money where the bank records contained mistakes or where it was possible that some money might be double-counted. The district court concluded that the amount of loss attributed to Rafferty, after giving him the benefit of the doubt, was $1,198,450. The district court found the amount of loss to be between $1 million and $2.5 million and added a 16-level enhancement to his offense level pursuant to U.S.S.G. § 2B1.1(b)(1). Rafferty's objection was overruled.

Rafferty's post-trial motions for new trial on Counts 1 and 2 and for acquittal on Counts 3 and 4 and were denied. Rafferty timely filed a notice of appeal. He claims improper admission of evidence, a violation of Brady v.

Maryland, 373 U.S. 83 (1995), vindictive prosecution, and improper sentencing.[2]

**DISCUSSION**

I.     Admission of Evidence.

A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). We review preserved evidentiary objections for harmful error. United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999), corrected by 194 F.3d 1186 (11th Cir. 1999).

A.     Summary Charts.

Rafferty challenges the admission of all eleven summary charts into evidence, alleges that the summary charts were "falsely created" in violation of his due process rights and claims that the manner in which the summary charts were introduced violated his due process right to effective cross examination. He also asserts a Brady violation related to the summary charts. As a preliminary matter, we find that the summary charts produced by FBI analyst Winter were properly admitted under Federal Rule of Evidence 1006 as summaries of the voluminous financial data. The data had also been previously admitted into evidence. See

---

[2]Throughout his briefs, Rafferty focuses on his assertion that many of the transactions depicted in the summary charts do not involve UMDA directly. His argument confounds the issues in this case; the losses stemming from Rafferty's actions are not the damages to UMDA per se, but the injuries inflicted by Rafferty upon the investors he defrauded.

United States v. Norton, 867 F.2d 1354, 1362-63 (11th Cir. 1989) (finding no abuse of discretion where district court admitted a summary chart and related testimony after admission of the checks depicted in the summary chart as relevant to establishing a conspiracy to engage in racketeering activity). As the summary charts were properly introduced at trial, Rafferty's allegations of deprivation of his due process rights are without merit and we find no abuse of discretion.

B.      Evidence of Prior Conviction, Injunction and Civil Fraud Judgments.

Challenges to evidentiary rulings are reviewed for an abuse of discretion. Baker, 432 F.3d at 1202. Count One of the second superseding indictment accused Rafferty of omitting material facts in communications with investors. Such alleged omitted facts included: (1) Rafferty's 1991 conviction for securities fraud in a New York federal court; (2) in 1993, an Illinois federal court permanently enjoined Rafferty from committing further acts of securities fraud; (3) the two civil fraud judgments entered against Rafferty in 2003; and (4) Rafferty's secret use of funds from investors in UMDA and other companies to pay his legal fees. Prior to trial, the government notified Rafferty of its intent to offer the foregoing evidence, including the facts underlying the civil judgments, as inextricably intertwined with the charged offenses or alternatively as evidence of intent, plan or knowledge, pursuant to Federal Rules of Evidence 404(b).

8

Rafferty moved to exclude this evidence on the grounds that he did not have a duty to disclose this information, that the investors did not rely on his representations before investing, and that the facts underlying the civil judgments were inadmissible under Federal Rule of Evidence 404(b). The district court heard argument several times and held that the conviction, the injunction and the civil judgments specified in the second superseding indictment were admissible as intrinsic evidence with the charged offenses. On appeal, Rafferty renews his objections. The Supreme Court has recognized a fiduciary duty in the instance of so-called "temporary insiders," specifically:

> Under certain circumstances, such as where corporate information is revealed legitimately to...[a] consultant working for the corporation, these outsiders may become fiduciaries of the shareholders. The basis for recognizing this fiduciary duty is not simply that such persons acquired nonpublic corporate information, but rather that they have entered into a special confidential relationship in the conduct of the business of the enterprise and are given access to information solely for corporate purposes.

Dirks v. S.E.C., 463 U.S. 646, 655 n.14 (1983).

To the extent the district court based its ruling on Rafferty's status as a "temporary insider" and that he was therefore under a duty to disclose the materially omitted facts, discussed supra, we find no abuse of discretion.

Furthermore, this court has held that:

9

> evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995).

The government argues specifically that the evidence is part of the offense charged and thus intrinsic, as witnessed by the reference to the specific material omissions, discussed supra, in the charges in the indictment. See also United States v. Bianco, 181 Fed. Appx. 846, 853-4, 2006 WL 1374495 at *7 (11th Cir. 2006) (unpublished) (admitting evidence showing that the defendant [while on trial for mail fraud, wire fraud and money laundering] was on probation, owed restitution, had been enjoined from soliciting investments, and was not licensed to provide check-cashing services as intrinsic to the offense and/or as relevant to his intent). We find no abuse of discretion in the district court's evidentiary ruling.

Evidentiary errors that are not specifically objected to at trial are reviewed for plain error. United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (holding that, "[u]nder this standard, we correct only for errors that are particularly egregious and that seriously affect the fairness, integrity or public reputation of judicial proceedings, and then only when a miscarriage of justice would result")

(citations, internal quotations and alteration omitted). At trial, the government tendered a certified copy of the 1991 conviction against Rafferty, with the Information attached. It was admitted. Rafferty neither objected to the attached Information at that time nor when the prosecutor referred to the facts in the Information in closing argument. For the first time in his motion for new trial, Rafferty claimed that he was not provided with a copy of the Information during discovery and objected to the admission of the Information on the grounds that its admission was highly prejudicial to his right to a fair trial. The record reflects, however, that Rafferty's counsel expressly stated that he did not object to the introduction of a certified copy of the 1991 conviction with attached Information at trial. Therefore, we find that he has failed to show plain error in its admission at trial.

II. Brady Claim.

Rafferty's Brady claim centers around summary chart S-5, which focuses on the activity of a Millennium Capital Trading bank account controlled by Ralf Riverso. The government argues that unknowing UMDA investors deposited money into Riverso's bank account and that none of these funds actually reached UMDA. Rafferty filed a motion in May 2005, requesting any exculpatory evidence from the government. The government's response did not inform

Rafferty of an interview that took place in early 2005 in which Riverso explained to government investigators that most of the funds that passed through his accounts were held for the benefit of someone besides Rafferty. After the verdict was returned, Rafferty filed a motion for new trial. In furtherance of this motion, Rafferty submitted an affidavit by Riverso describing his 2005 interview with the government. The district court denied the motion for new trial.

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Grossman v. McDonough, 466 F.3d 1325, 1341-42 (11th Cir. 2006) (citation omitted). The information contained in the Riverso affidavit, assuming its veracity, would only call into question the information in one of the government's eleven summary charts [chart S-5]. The remaining charts, witnesses, and other evidence before the jury support the government's contention that investors' money was fraudulently funneled at Rafferty's direction to entities not including UMDA. Therefore, the Riverso evidence is not material, i.e., if it had been admitted at trial in Rafferty's favor,

12

there is not a reasonable probability of a different outcome in this case.

III.     Vindictive Prosecution.

The dismissal of an indictment on the ground of prosecutorial misconduct is reviewed for an abuse of discretion. United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006). A district court abuses its discretion if it applies the incorrect legal standard or makes findings of fact that are clearly erroneous. Id. Rafferty alleges that the government brought the first and second superseding indictments to punish Rafferty for not pleading guilty. Rafferty also alleges that the Assistant U.S. Attorney threatened to withdraw the plea deal if he filed any more motions and later told Rafferty's attorney that, "[Rafferty] should have taken his three and one-half year plea while he had the chance."

We find that Rafferty has failed both to show any objective evidence of actual vindictiveness on the part of the government or to raise circumstances meriting a rebuttable presumption of vindictiveness. See United States v. Dorsey, 512 F.3d 1321, 1325 (11th Cir. 2008). The government acquired more evidence against Rafferty as a result of the Gallo plea agreement; nothing precluded the government from seeking the first and second superseding indictments.

IV.     Motions for Judgment of Acquittal and New Trial.

A.     Motion for Judgment of Acquittal.

Challenges to the sufficiency of the evidence are reviewed de novo.  United States v. Keller, 916 F.2d 628, 632 (11th Cir. 1990).  In this context, all reasonable inferences and credibility choices are made in favor of the jury verdict.  United States v. Young, 39 F.3d 1561, 1565 (11th Cir. 1994).

In order to uphold a lower court's denial of judgment of acquittal, it is only necessary to find that a reasonable factfinder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt.  Keller, 916 F.2d at 632.  Rafferty argued that the evidence at trial was insufficient to sustain his conviction for wire fraud on Counts 3 and 4.  However, a defendant need not be proven to have actually participated in or initiated the wire communications to be guilty of violating the wire fraud statute.  United States v. Snyder, 505 F.2d 595 (5th Cir. 1974).[3]  We find that the evidence and testimony presented at trial, including the summary charts which depict wire transfers of investment money, is sufficient to support the jury's verdict.

B.     Motion for New Trial.

A denial of a motion for new trial is reviewed for an abuse of discretion.  United States v. Fernandez, 136 F.3d 1434, 1438 (11th Cir. 1998).  In furtherance

---

[3]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

14

of his motion for new trial on Counts 1 and 2, Rafferty argued that, by deliberating for only two hours, the jury clearly failed to follow the district court's instructions to consider evidence separately with respect to each count. Rafferty cited no law in support of his assertion that the short length of jury deliberations reflects any bias against him. Furthermore, the Tenth Circuit has ruled against this very argument. See United States v. Lawrence, 405 F.3d 888, 904-05 n.11 (10th Cir. 2005) (denying motion for mistrial where jury deliberations lasted two hours and finding no evidence of prejudice against defendant).

Rafferty also alleged the improper admission of the summary charts, the civil and criminal convictions, including the Information attached to the 1991 conviction, as well as the violation of Brady, discussed supra. Incorporating our reasoning in sections I and II above, we conclude that the district court did not abuse its discretion in denying Rafferty's motion for new trial.

V.      Sentence.

On appeal Rafferty argues that in handing down his 126-month sentence, the district court erred by applying a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I) based on its finding that Rafferty was responsible for losses between $1,000,000 and $2,500,000. In addition to his substantive arguments about § 2B1.1(b)(1)(I), Rafferty also argues that he was not given an opportunity

to address the court on the loss issue and that the court erred by independently calculating the loss.

"A district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error." United States v. Medina, 485 F.3d 1291, 1303 (11th Cir. 2007)(citation omitted). Under U.S.S.G. § 2B1.1(b)(1), a defendant's base offense level is increased by 16-levels if the offense involved losses in the amount of more than $1,000,000, but less than $2,500,000. U.S.S.G. § 2B1.1(b)(1)(I). The application notes provide that "loss is the greater of actual or intended loss." Id., comment (n.3(A)). Actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." Id., comment (n.3(A)(I)). "[T]he government bears the burden of supporting its loss calculation with reliable and specific evidence." United States v. Renick, 273 F.3d 1009, 1025 (11th Cir. 2001)(citation omitted).

"[T]he Sentencing Guidelines require a district court, at the sentencing stage, to make independent findings establishing the factual basis for its Guideline calculations." United States v. Hamaker, 455 F.3d 1316, 1338 (11th Cir. 2006). "The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to

16

appropriate deference." U.S.S.G. § 2B1.1(b)(1), comment (n.3(C)). "A reasonable estimate of the loss amount is appropriate because often the amount of loss caused by fraud is difficult to determine accurately." Medina, 485 F.3d at 1304 (citation omitted). "But while estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." Id., (citation and alternation omitted).

"Fraudulent schemes...come in various forms, and we must consider the nature of the scheme in determining what method is to be used to calculate the harm caused or intended." United States v. Orton, 73 F.3d 331, 333 (11th Cir. 1996). "The Sentencing Commission is clearly aware that different types of fraud may call for different methods of calculation." Id. at 333 n.4. Nonetheless, "[l]oss...focuses generally on the harm suffered by the victim of the criminal conduct rather than on the proceeds of the crime enjoyed by the defendant." Hamaker, 455 F.3d at 1337.

Rafferty argues that the district court erred by adopting a methodology of calculating his applicable guideline range that was not advanced by the government or the probation officer and that the court therefore assumed the role properly left to the prosecution. Specifically, he argues that the district court erred by not calculating the loss as the diminution in the net value of the shares between

the time the conspiracy began and the time it ended, March 2003 to February 2004; the approach this Court employed in United States v. Snyder, 291 F.3d 1291, 1295 (11th Cir. 2002).  Here, however, the district court found that the UMDA stock was "worthless" at the conclusion of the conspiracy and, therefore, no such subtraction was warranted.  This exhaustion of the subject stock's value did not occur in Snyder, where shares of Biocryst Pharmaceuticals, Inc. were found to have retained some value over the life of the conspiracy.

Furthermore, this Court in Snyder did not mandate a particular loss calculation approach and stated that many methods were acceptable.  "All that is required is that the court make a reasonable estimate of the loss, given the available information." Id., at 1295-96 (citations omitted).  Here, the district court calculated the loss by determining the amount of investor funds deposited in to Rafferty's various bank accounts, taking care to only aggregate funds clearly invested in UMDA, not other companies, as a result of Rafferty's solicitation.  The district court did not subtract the value of the stock at the end of the conspiracy, as such arithmetic would be pointless.  See United States v. Olis, 429 F.3d 540, 546 (5th Cir. 2005) (stating that, "[i]n cases where defendants promoted worthless stock in worthless companies, measuring the loss as the entire amount raised by the schemes is neither surprising nor complex, and is fully consistent with civil

18

loss calculation"). Also, the district court's loss calculation methodology was conservative, excluding some amounts that were transferred during the course of the conspiracy, in order to avoid the risk of mistakes or double-counting amounts.

Rafferty also contends that he had no opportunity to challenge the district court's loss findings, denying Rafferty his Sixth Amendment right to counsel. However, Rafferty addressed the district court on the loss issue in both his sentencing memorandum and in his objections to the pre-sentencing investigation report. Additionally, the district court heard extensively from Rafferty on the issue at both the first and second sentencing hearings. This argument is meritless.

Finally, Rafferty argues that the district court erred by independently calculating the amount of loss. His complaint is that the district court made calculations of its own in between the first and second sentencing hearings. We find nothing wrong with this. Rafferty had the opportunity to address the district court when its calculations were presented. Indeed, the district court is required to exercise independent judgment in Guidelines calculations. See United States v. Foley, 508 F.3d 627, 633 (11th Cir. 2007) (holding that the district court erred by adopting the jury's forfeiture verdict as the amount of loss, thus abdicating its responsibility to make independent findings under the Sentencing Guidelines).

We find that Rafferty failed to demonstrate that the district court employed

an improper loss-calculation methodology or that its factual findings were clearly erroneous. Furthermore, Rafferty's arguments that he was not given an opportunity to address the district court on the loss calculation issue and that the court erred by conducting its independent loss calculation are without merit.

## CONCLUSION

The district court's denial of the motion for new trial and denial of the motion for judgment of acquittal are AFFIRMED. Rafferty's conviction and sentence are also AFFIRMED.