[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2012
JOHN LEY
CLERK

No. 11-12620

_____

D.C. Docket No. 0:10-cr-60320-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIS KENDRICK, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 1, 2012)

Before MARCUS and BLACK, Circuit Judges, and HODGES,[*] District Judge.

MARCUS, Circuit Judge:

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

Willis Kendrick III appeals following his conviction for alien smuggling for commercial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). Kendrick argues that the district court erred by: (1) denying his motion to dismiss the indictment based on vindictive prosecution; (2) failing to grant a judgment of acquittal based on insufficiency of the evidence; (3) granting the government's motion in limine precluding Kendrick from discussing the events of his prior trial beyond an excerpt of his sworn testimony; and (4) denying Kendrick's motion in limine seeking to introduce portions of the prosecutor's closing argument from Kendrick's prior trial as an admission of a party opponent under Fed. R. Evid. 801(d)(2). After thorough review we affirm.

I.

The relevant facts and procedural history are these. In December 2010, a federal grand jury sitting in the Southern District of Florida indicted Kendrick on one count of knowingly bringing or attempting to bring an alien into the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). Prior to this indictment, a federal grand jury had charged Kendrick in June 2010 with marijuana trafficking and firearm offenses, in violation of 46 U.S.C. § 70503(a)(2) and 18 U.S.C. § 924(c); he was acquitted by a jury on all counts. Both sets of charges arose in connection with an

2

incident from May 28-29, 2010, when U.S. Coast Guard personnel boarded a vessel that Kendrick was piloting late at night off the coast of Florida, and discovered a firearm, 900 pounds of marijuana, and a previously deported illegal alien named Robert Harding.

During the first trial on the drug and firearm charges, Kendrick denied knowing about the marijuana, which was found in several hidden compartments, but admitted that he had gone to the Bahamas to bring illegal aliens back into the United States for money. He first testified that he had called off the alien smuggling deal when he found out that the three people he was supposed to bring back on the boat did not have passports. On cross-examination, however, he conceded that he had agreed to commit the federal offense of alien smuggling in exchange for $25,000, and that he knew the people he planned to transport from the Bahamas to the United States were illegal aliens. He later retreated from his earlier admission, and implied that he thought he was being compensated for bringing back legal aliens.[1]

---

[1] The relevant portions of Kendrick's testimony during his first trial went this way:

Q:      What happened when you arrived [in the Bahamas]?
         . . . .

A:      . . . I [told my contact there], "Well, if they don't have any kind of passport I'm not taking those guys back."

3

Q:      Why is that?  Why did you say that?

A:      Because I know that that's wrong to do.  If they didn't have any passport that they was -- that was illegal.
        . . . .

Q:      You are telling this jury under oath that you committed a federal crime of alien smuggling.

A:      Yes, sir.

Q:      That you knowingly in exchange for $25,000 agreed to smuggle illegal aliens into the United States.

A:      Yes, sir.

Q:      You understand that could get you in a lot of trouble, right?

A:      Yes, sir.

Q:      So if agents came and arrested you, you would be okay with that?

A:      I done wrong.
        . . . .

Q:      It is your testimony that you had no idea you were going to be bringing back an illegal alien?

A:      No.  I knew.
        . . . .

Q:      . . . So you told the jury a second ago you were very concerned about abiding by the law.

A:      Yes, sir.

Q:      And yet you did it anyway?

A:      Yes, sir.

Q:      And you knew you were going to be smuggling an alien back from the Bahamas prior to your departure, didn't you.

4

A: Yes, sir.

Q: Because they were paying you, what, between 25 and 30,000?

A: Twenty-five, yes, sir.

Q: And you knew these people were not going to be legal.

A: Yes, sir.

Q: So the testimony about the whole, "I wanted to make sure everybody is legal. I never would have brought back somebody without papers," that you testified to a moment ago that wasn't true.

A: That's not true.

Q: So when you were testifying under oath a second ago you were lying to this jury?

A: When I got to Bimini if Mr. Harding had not had a passport I would not have brought him back.
. . . .

Q: Wait a second. So you want this jury to believe you were being paid $25,000 to bring back legal people?
. . . .

Q: . . . These people were willing to pay you $25,000 for a trip that costs a hundred bucks.

A: Yes, sir.

Q: And you're telling this jury you had no idea that you were going to be committing a crime.

A: I kind of -- I felt as though as something was wrong about it.

Q: But because you were getting paid $25,000 you figure, "Well, I'll take him back anyway."

A: Yes, sir.

5

In closing argument, the government said that Kendrick's claim that he thought he was getting $25,000 to transport legal aliens was not credible, and that drug trafficking must have also been involved. Following an acquittal, the government brought the present alien smuggling charge based, in part, on Kendrick's own testimony in the first trial.

After pleading not guilty, Kendrick moved to dismiss, arguing that the prosecutor had vindictively brought new charges against him in order to retaliate for Kendrick's acquittal in the earlier trial on drug and firearm charges arising out of the same conduct. The government responded that, at the time of the original indictment, there was insufficient evidence to indict Kendrick for the alien smuggling charge, and, indeed, it was not until his admissions during the first case that it had a sufficient evidentiary foundation to bring the new charge. The district court rejected the defendant's motion.

The government also moved <u>in limine</u> to bar the defense from mentioning the previous acquittal or trial, or making any argument regarding vindictive prosecution. Kendrick objected, claiming that the jury needed to have a full understanding of the circumstances surrounding his testimony in the earlier case.

---

(Transcript of Kendrick's testimony at 18-19, 41-42, 44-46).

The court agreed with the government and granted the motion. Kendrick in turn filed a motion in limine seeking to introduce excerpts of the prosecutor's closing argument from the first trial; the district court disagreed and denied the motion.

At the alien smuggling trial, Immigration and Customs Enforcement ("ICE") Agent Rafael Albuernes read into evidence Kendrick's portions of sworn testimony from the first trial. In that testimony, among others, Kendrick admitted to agreeing to smuggle three illegal aliens from Bimini, Bahamas into the United States for $25,000. Several Coast Guard officials also testified about their interception of Kendrick's boat. At the conclusion of the government's case, Kendrick moved for a judgment of acquittal, claiming that the government had not proven that Kendrick knew Harding was an illegal alien. The court rejected the motion.

In his defense, Kendrick testified that in April 2010, he met two individuals who asked him to go to Bimini and pick up three people for $25,000. Kendrick said that, when he arrived in Bimini, he did not take the three individuals onto the boat with him because they did not possess passports. The defendant added that he was then told that Harding (who was not part of the original plan) had a passport and just needed to get back to his family in the United States. Kendrick claimed that he did not expect to be paid for the last minute arrangement

7

concerning Harding.  On cross-examination, Kendrick admitted that he had driven the boat to the Bahamas under the cover of darkness, and had checked Harding's passport so that, if caught, Kendrick could claim he thought that Harding was legal.  Harding testified, for his part, that he had never met Kendrick before the smuggling incident, that Kendrick never asked to see Harding's passport or travel documents, and that Harding paid another man, not Kendrick, to be smuggled back into the United States.

Thereafter, the jury found Kendrick guilty of the alien smuggling charge. This timely appeal followed.

II.

We review a district court's decision whether to dismiss an indictment due to prosecutorial misconduct for abuse of discretion, United States v. Jordan, 316 F.3d 1215, 1248-49 (11th Cir. 2003), and we have applied that standard in a prosecutorial vindictiveness case, United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006).  Abuse-of-discretion review "recognizes the range of possible conclusions the trial judge may reach," United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc), and we must affirm unless we determine that the district court made a clear error of judgment or applied an incorrect legal standard, United States v. Abreu, 406 F.3d 1304, 1306 (11th Cir. 2005) (per curiam).  We

review "de novo the legal question of whether a presumption of vindictiveness arises from the facts of the case." United States v. Jones, 601 F.3d 1247, 1260 (11th Cir. 2010).

We review de novo the denial of a motion for a judgment of acquittal based on the insufficiency of the evidence. United States v. Gari, 572 F.3d 1352, 1359 (11th Cir. 2009). In doing so, we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in favor of the jury's verdict. United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007). Finally, we review a district court's ruling on a motion in limine for abuse of discretion. See United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994). Even if the evidence was admitted or excluded improperly, we will not vacate unless the defendant's substantial rights were affected. See United States v. Quinn, 123 F.3d 1415, 1420-21 (11th Cir. 1997).

## III.

First, we are unpersuaded by Kendrick's claim that the district court abused its discretion by denying his motion to dismiss the indictment based on vindictive prosecution. Generally, if a prosecutor has probable cause to believe that the defendant committed a crime, "the courts have no authority to interfere with a prosecutor's decision to prosecute." Barner, 441 F.3d at 1315. However,

"[r]eindictment violates due process whenever a prosecutor adds new charges merely to retaliate against the defendant for exercising statutory or constitutional rights." United States v. Spence, 719 F.2d 358, 361 (11th Cir. 1983) (per curiam). "A prosecutor's charging decision does not impose an improper 'penalty' on a defendant unless it results from the defendant's exercise of a protected legal right, as opposed to the prosecutor's normal assessment of the social interests to be vindicated by the prosecution." United States v. Taylor, 749 F.2d 1511, 1514 (11th Cir. 1985) (per curiam) (citing Spence, 719 F.2d at 364).

"A prosecutor's decision to seek heightened charges after a defendant successfully appeals his conviction for the same conduct is presumed to be vindictive." Barner, 441 F.3d at 1315-16. However, the prosecution may rebut the presumption by establishing reasons for adding the new charges other than to punish the defendant for exercising his legal rights. Jones, 601 F.3d at 1260. This may include showing that it could not have proceeded previously on the additional charge. Id.; see also Hardwick v. Doolittle, 558 F.2d 292, 301 (5th Cir. 1977) (noting that vindictiveness may be negated where "evidence of the additional crimes may not have been obtained until after the first indictment or

information [was] filed").[2] Once the prosecution has rebutted the presumption, the burden rests on the defendant to demonstrate actual prosecutorial vindictiveness, which essentially requires a showing that the prosecution's justification is pretextual. Jones, 601 F.3d at 1261.

We have also said that adding new charges based on independent acts, "even where the separate acts that prompted the new charges occurred in the same 'spree of activity,'" does not create a presumption of prosecutorial vindictiveness. Id. at 1261 n.5 (quotation omitted). Under these circumstances, the defendant must prove actual vindictiveness. Id.; see also Taylor, 749 F.2d at 1513.

While our case law has focused on second indictments brought after a defendant has successfully appealed his conviction, several of our sister circuits have addressed the precise issue before us: second indictments brought after acquittals. They have uniformly concluded that when the government brings a second federal indictment against a defendant after he was acquitted of different offenses arising out of the same incident, the acquittal alone is insufficient to give rise to a presumption of prosecutorial vindictiveness. In the first of these cases, United States v. Esposito, 968 F.2d 300 (3d Cir. 1992), the defendant was

_____

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

acquitted of Racketeer Influenced and Corrupt Organizations Act ("RICO") charges, and later indicted for offenses based on the same drug transactions that formed a basis for the RICO charges. The Third Circuit held that it would "not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case [was] justified by the evidence and [did] not put the defendant twice in jeopardy." Id. at 306. The court noted that creating a presumption in these circumstances would be "tantamount to making an acquittal a waiver of criminal liability for conduct that arose from the operative facts of the first prosecution." Id. It distinguished the commencement of new charges after a successful appeal from bringing them after an acquittal because "[n]o defendant will be deterred from exercising his right to go to trial because of fear that following an acquittal the prosecution may bring additional outstanding charges. Those charges exist and can be brought even if the defendant is convicted." Id. at 305.

Relying on the Third Circuit's holding in Esposito, the Eighth Circuit -- in a case where the defendants had previously been acquitted of possession with intent to distribute controlled substances charges, and were later indicted for firearm and other new charges -- likewise concluded that "the defendants' acquittals on the . . . charges in the first trial did not involve the exercise of a right by the defendants

12

which would raise a presumption of vindictiveness." United States v. Rodgers, 18 F.3d 1425, 1430 (8th Cir. 1994). Similarly, the Tenth Circuit, also relying on Esposito, held in a case involving bank fraud that an "acquittal itself cannot form the basis for a charge of prosecutorial vindictiveness." United States v. Wall, 37 F.3d 1443, 1449 (10th Cir. 1994). And, finally, in United States v. Johnson, 171 F.3d 139, 140-41 (2d Cir. 1999) (per curiam), which involved a second indictment for firearm charges after the defendant was acquitted on RICO charges, the Second Circuit joined the Third, Eighth, and Tenth Circuits in holding that "a new federal prosecution following an acquittal on separate federal charges does not, without more, give rise to a presumption of vindictiveness."

Kendrick's violation of 8 U.S.C. § 1324(a)(2)(B)(ii), relating to alien smuggling, carried a penalty of three to ten years' imprisonment. 8 U.S.C. § 1324(a)(2)(B). His earlier charge, knowingly and intentionally possessing marijuana with intent to distribute while aboard a vessel, in violation of 46 U.S.C. § 70503(a)(2), subjected him to a greater penalty of five to forty years' imprisonment. See 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(2)(G). Similarly, when the government previously charged him with possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c), he faced a minimum penalty of five years' imprisonment. 18 U.S.C. § 924(c)(1)(A)(i).

13

In this case, there is no presumption of vindictiveness. For starters, the second indictment did not follow a successful appeal by Kendrick nor did it seek heightened charges. See Barner, 441 F.3d at 1315-16; compare 8 U.S.C. § 1324(a)(2)(B), with 18 U.S.C. § 924(c)(1)(A)(i), 21 U.S.C. § 960(b)(2)(G), and 46 U.S.C. § 70506(a). Moreover, the alien smuggling charge was based on acts independent of the drug and weapons offenses adjudicated in the first trial, so even though the alien smuggling arose out of the same "spree of activity," we do not presume vindictiveness. See Jones, 601 F.3d at 1261 n.5; Taylor, 749 F.2d at 1513. There is no presumption of vindictiveness for still another reason: we agree with our sister circuits that bringing a second indictment, supported by evidence, against a defendant after an acquittal does not result in a presumption of vindictiveness. See Johnson, 171 F.3d at 141; Wall, 37 F.3d at 1449; Rodgers, 18 F.3d at 1430; Esposito, 968 F.2d at 304, 306.[3]

But even if a presumption of vindictiveness somehow arose as a matter of law, the government rebutted the presumption by explaining that it did not bring the alien smuggling charge to punish Kendrick because it did not have sufficient

_____

[3] Although Kendrick argues that reliance on Esposito and Johnson is misplaced, because they involved RICO offenses that are very different from the case at hand, the holdings in those cases were not dependent on the type of offenses involved, see Johnson, 171 F.3d at 141; Esposito, 968 F.2d at 304, 306. Nor has Kendrick challenged the holdings of the Eighth and Tenth Circuits, which did not involve RICO charges.

14

evidence at the time of the original indictment to charge Kendrick with knowingly smuggling an alien for profit. See Jones, 601 F.3d at 1260; Hardwick, 558 F.2d at 301. At the time of the original indictment, Harding had not implicated Kendrick, and during his arrest, Kendrick had admitted that he was smuggling drugs, not aliens; thus, prior to Kendrick's admissions about alien smuggling during the first trial, there was precious little evidence of Kendrick's knowledge of Harding's immigration status, or, for that matter, of Kendrick's prior financial arrangement to smuggle illegal aliens.

Furthermore, Kendrick has not offered the slightest shred of evidence supporting a claim of actual prosecutorial vindictiveness. Rather, he asserts only at the highest order of abstraction that the government prosecuted him in the second trial with evidence that it had previously argued was false. The government had argued at the first trial that it did not make sense that Kendrick would be paid $25,000 to transport legal aliens. The prosecutor also claimed in closing argument that the $25,000 that Kendrick was to receive was for smuggling drugs into the country, not aliens. However, at no time did the prosecutor argue that Kendrick had not agreed to smuggle an illegal alien into the country, or that the defendant did not have some sort of financial motive for doing so.

15

Moreover, the prosecutor never claimed that Kendrick's entire testimony was false, but rather, only that the defendant's version of the events relating to the transportation of <u>legal</u> aliens for a large amount of cash strained credulity. We add that in the indictment for alien smuggling following Kendrick's acquittal for the drug and firearm offenses, the government did not charge that Kendrick was paid $25,000 in order to bring an illegal alien into the United States. The indictment only alleged that Kendrick knowingly brought or attempted to bring an illegal alien into the United States <u>for profit</u>. In short, the record is barren of support for the claim that the government attempted to prosecute Kendrick with evidence that it knew to be false, or that it had otherwise evinced actual vindictiveness. The district court did not abuse its discretion in rejecting the prosecutorial vindictiveness claim.

IV.

We also can discern no merit in Kendrick's argument that the district court erred in failing to grant a judgment of acquittal based on insufficiency of the evidence. In reviewing a sufficiency claim, the ultimate question is whether a reasonable trier of fact could have found guilt beyond a reasonable doubt. <u>Gari</u>, 572 F.3d at 1359. "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made

16

between the weight given to either direct or circumstantial evidence." United States v. Doe, 661 F.3d 550, 560 (11th Cir. 2011) (quotation omitted). After hearing the defendant testify, the jury is free to believe the exact opposite of that testimony. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

In order to sustain a charge that a defendant is guilty of smuggling an alien for commercial gain, the government must prove beyond a reasonable doubt that the defendant: (1) knowingly brought an alien into the United States; (2) knew or recklessly disregarded the fact that the alien had not received prior official authorization to come to or enter the United States; and (3) participated in the smuggling for the purpose of commercial advantage or private financial gain. United States v. Dominguez, 661 F.3d 1051, 1063-64, 1066 (11th Cir. 2011); see also 8 U.S.C. § 1324(a)(2)(B)(ii).[4]  As for the first two elements, "a specific intent to violate the law is not required," and the defendant need not know that the act is illegal or wrong. Dominguez, 661 F.3d at 1068-69. Rather, "'knowingly' merely requires proof of knowledge of the facts that constitute the offense." Id. at 1068 (quotation omitted). "To act with 'reckless disregard' means to be aware of, but

---

[4] In relevant part, the statute provides for criminal penalties against an individual who, "for the purpose of commercial advantage or private financial gain," "knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien."  8 U.S.C. § 1324(a)(2)(B)(ii).

17

consciously and carelessly ignore, facts and circumstances clearly indicating that the person transported was an alien who had entered or remained in the United States in violation of law." United States v. Perez, 443 F.3d 772, 781 (11th Cir. 2006) (emphasis omitted). As for the third element, there need not be evidence of actual payment or even an agreement to pay; rather, it is sufficient if the defendant acted for the purpose of financial gain. Dominguez, 661 F.3d at 1066.

Viewed in the light most favorable to the government, the evidence was sufficient to allow the jury to reasonably find beyond a reasonable doubt that Kendrick knowingly smuggled an alien into the United States for profit. As the record shows, there was sufficient evidence for the jury to conclude that Kendrick knew or was in reckless disregard of the fact that Harding did not have authorization to enter the United States. See id. at 1063-64. First, the jury was entitled to rely on Kendrick's admission from his prior sworn testimony that he knew that he was "going to be bringing back an illegal alien." Although Kendrick testified that he did not know that Harding was an illegal alien and that Kendrick's prior testimony referred to three other individuals whom he decided not to smuggle into the United States, the jury could have found that Kendrick's prior sworn testimony was credible, and that his testimony during the second trial was not; we are obliged to view credibility choices in favor of the jury's verdict. See

18

Taylor, 480 F.3d at 1026.  Moreover, when a criminal defendant chooses to testify on his own behalf, his statements, if disbelieved by the jury, may be considered as substantive evidence of his guilt.  Brown, 53 F.3d at 314.

In the second place, a Coast Guard officer testified at the second trial that at night Kendrick fled from her vessel and ignored her repeated hails.  Indeed, it was not until another Coast Guard crew aboard a faster vessel approached with their weapons drawn that Kendrick brought his vessel to a stop.  The jury could have drawn the reasonable inference that Kendrick would not have fled from the Coast Guard if he did not believe that he was doing something illegal.  Although Kendrick denied that he fled from the Coast Guard vessel, the officer testified that her vessel's navigator lights could be seen from six miles away, the flashing blue light could be seen from at least one mile away, the vessel's siren was very loud, and her vessel was, at times, alongside Kendrick's vessel only about 800 yards away.

Third, since Harding was not a United States citizen and was being transported from a foreign country to the United States on a boat in the middle of the night, the jury could well have concluded that, even if Kendrick did not know for sure that Harding was an illegal alien, he consciously ignored facts that clearly indicated that Harding was not legal.  See Perez, 443 F.3d at 781.  Furthermore,

19

Kendrick claimed that he checked Harding's passport before commencing the voyage and that he believed Harding's possession of a passport made Harding legal, but Harding testified that Kendrick never asked to see his passport or any travel documents, and the jury plainly was entitled to credit Harding's testimony over Kendrick's.

There was also sufficient evidence for the jury to conclude that Kendrick smuggled Harding into the United States for profit. In Kendrick's prior testimony, he admitted that he had agreed to be paid to smuggle an alien into the United States. Harding also testified that he agreed to pay smugglers $5,000 to be transported to the United States, even though he did not pay Kendrick directly. While Kendrick claimed that he had a change of heart about the first three aliens, and agreed to take Harding to the United States without any expectation of payment, the jury was free not to believe that Kendrick intended to bring Harding into the United States in the dead of night out of the simple goodness of his heart, especially considering the obvious risks associated with the venture. And, even if the jury believed that Harding was not part of the original deal, as Kendrick contends, evidence of an actual agreement to be paid was not necessary. Dominguez, 661 F.3d at 1066. It is enough if Kendrick acted "for the purpose of financial gain." See id. In short, on this record, a reasonable trier of fact could

20

have determined that Kendrick knowingly smuggled an illegal alien into the United States for profit. See Gari, 572 F.3d at 1359.

V.

We are, likewise, unpersuaded by Kendrick's claim that the district court abused its discretion in granting the government's motion in limine precluding the defendant from discussing the events of his prior trial, even though a few excerpts of Kendrick's testimony from the prior trial (the substance of which we've set out in footnote one) were presented to the jury. Under Fed. R. Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. "It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is 'off the scale,' his discretion is not abused." United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005).

Moreover, judgments of acquittal are hearsay, and do not fall within any exception to the rule against the admission of hearsay evidence. United States v. Irvin, 787 F.2d 1506, 1516-17 (11th Cir. 1986). In Irvin, we concluded that a district court did not abuse its discretion in granting the government's motion in limine, which prevented the defendant from mentioning, referring to, or soliciting

21

information about the acquittals of his co-defendants in a previous trial. Id. at 1516. After noting that a judgment of acquittal is inadmissible hearsay, id., we said that, "[e]ven if the evidence of prior acquittal was otherwise admissible, it would be properly excludable under [Fed. R. Evid. 403], because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Id. at 1517.

Here, the district court did not abuse its discretion. To begin, the evidence of Kendrick's prior acquittal was inadmissible hearsay. See id. at 1516. Additionally, any discussion of the marijuana and firearm offenses on which Kendrick was acquitted may well have only confused the jury, and this risk arguably outweighed any probative value that the information may have had. See id. at 1517; see also United States v. Lyons, 403 F.3d 1248, 1256 (11th Cir. 2005) (concluding that the relevance of the defendant's prior acquittal was "exceedingly marginal and, given that it may have confused the jury, we can find no abuse of discretion in the district court's decision to exclude this evidence"). In this connection, Kendrick only claims that, had he been allowed to discuss the marijuana crime during the alien smuggling case, he could have argued that Harding was not part of the original deal and was only an afterthought, which would have supported his claim that he did not smuggle Harding for profit. The

problem with the argument is that Kendrick did actually testify at trial that Harding was only an afterthought and was not part of the original smuggling deal. Moreover, an Immigration and Customs Enforcement agent testified that Kendrick said Harding was just an afterthought and not part of the original deal, and Kendrick admits in his brief on appeal that he and the agent gave testimony to that effect at trial. Whether the original deal involved marijuana or the smuggling of three individuals other than Harding, Kendrick was still able to assert (and did) through the testimony of two witnesses that Harding was not part of the original deal. Thus, even if the district court had improperly excluded the evidence relating to the marijuana offense -- and it did not -- we do not see how Kendrick's substantial rights were affected. See Quinn, 123 F.3d at 1420-21.

Finally, we are unpersuaded by Kendrick's claim that the district court abused its discretion in denying his motion in limine because the prosecutor's closing argument in the first trial was an admission of a party opponent under Fed. R. Evid. 801(d)(2). At the outset, we observe that "statements and arguments of counsel are not evidence." United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (quoting United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990)). In fact, the district court so instructed the jury in this case, observing that "what the lawyers say to you is not evidence, but merely their opportunity to explain what

23

they think has been proven in this case."  See also 11th Cir. Pattern Jury Instruction 4 ("[A]nything the lawyers say is not evidence and isn't binding on you.").

Pursuant to Fed. R. Evid. 801(d)(2)(A)-(B), a statement by a party opponent is not considered hearsay if it "was made by the party in an individual or representative capacity," or is a statement that "the party manifested that it adopted or believed to be true."  In United States v. DeLoach, 34 F.3d 1001 (11th Cir. 1994) (per curiam), we addressed the defendant's claim that, based on Second Circuit case law, statements the prosecutor made in closing argument in a previous case against a co-defendant, which were inconsistent with allegations made by the prosecutor in a subsequent case against the defendant, should have been admissible in the second case as admissions by a party opponent under Rule 801(d)(2).  The district court in that case had denied admission of the prosecutor's statements, noting that an attorney's arguments are not evidence and that admission of the statements "would create a substantial likelihood of jury confusion under [Fed. R. Evid. 403]."  Id. at 1005 n.7.  We observed that, "in the Second Circuit an attorney's arguments may be admissible, but admissibility is tightly circumscribed."  Id. at 1005.  Thus, the Second Circuit required that, for statements like these to be admissible, they must be: (1) "assertions of fact that are

24

the equivalent of a testimonial statement by the [client]"; and (2) "inconsistent with similar assertions in a subsequent trial." Id. (quotation omitted). We noted in DeLoach, however, that the prosecutor's statements there related to advocacy concerning the credibility of the witnesses and invitations for the jury to draw inferences, which would not be admissible even under the Second Circuit's test. Id. at 1005-06. We also determined that the prosecutor's comments in the first trial were not "clearly inconsistent" with the evidence presented in the second case, and, significantly, were not statements of fact equivalent to a testimonial statement by a client. Id. at 1006. Thus, we concluded that the district court did not abuse its discretion by excluding the prosecutor's comments, because the statements "would be inadmissible as admissions of a party opponent even under the cases relied upon by [the defendant]." Id.

In this case, the district court correctly determined that closing argument comments by counsel are not evidence, see Lopez, 590 F.3d at 1256, and therefore, that the prosecutor's statements drawn from the previous trial could not be admitted as evidence in the second trial as Kendrick had requested. But even if we were to consider the possibility of admitting the prosecutor's comments as statements of a party opponent under the Second Circuit's standard -- which we did not expressly adopt in DeLoach -- the district court still would not have abused

25

its discretion in denying the admission of the prosecutor's statements. In the first place, the prosecutor's comment in the first trial -- that Kendrick's explanation that he was transporting legal aliens for $25,000 did not make sense -- went to Kendrick's credibility and undermined the defense's case, and would not have been admissible even using the Second Circuit's approach. See DeLoach, 34 F.3d at 1005. Moreover, as we've already said, the prosecutor's arguments in the second trial were not clearly inconsistent with his statements in the first one. See id. at 1005-06. Finally, the only statement by the prosecutor that could even possibly be construed as a statement of fact was the prosecutor's comment that "[t]he 25 to $30,000 is the cut [Kendrick] gets for the risk he's taking for smuggling the drugs into the country, not an alien." However, in context, it is clear that the prosecutor was inviting the jury to draw the inference that the $25,000 was for smuggling drugs, not for just smuggling aliens. See id. at 1005. Moreover, if the prosecutor during the first trial actually had expressed his "personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant" -- and we do not believe he did -- Kendrick should have objected to these prosecutorial remarks (which he did not), because plainly they would have been improper. See United States v. Lacayo, 758 F.2d 1559, 1565 (11th Cir. 1985) (quoting ABA Stds. for Crim. Justice 3-5.8(b) (2d ed. 1980)).

26

Finally, even if the statements somehow were considered to be evidence, the court would have properly excluded them under Rule 403, because their admission likely would have opened the door widely to an entirely new set of evidence and hypotheses to be drawn from the marijuana and firearm charges, and likely would have confused the jury in the process. Cf. United States v. Delgado, 903 F.2d 1495, 1499 (11th Cir. 1990).

**AFFIRMED.**