[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10850
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cr-14028-KAM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEON HEPBURN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 16, 2017)

Before MARCUS, MARTIN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In November 2016, a jury convicted Defendant Deon Hepburn on six counts of knowingly bringing an alien into the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2.  Defendant appeals, arguing that there was not sufficient evidence to support his convictions. Specifically, Defendant contends that the Government's key witness was not credible and that there are alternative explanations for his actions.  After careful review, we affirm.

## I. BACKGROUND

### A. Factual Background[1]

Johnny Elpidio Villar, a citizen of the Dominican Republic who was previously deported from the United States after a felony drug conviction, testified for the Government during the trial of Defendant.  He stated that he wanted to return to the United States to find better job opportunities.  In May 2016, a friend introduced him to Marvin Johnson, who agreed to help Villar move to the United States in return for $12,000.  Johnson helped Villar obtain a falsified permit to work in the Bahamas, allowing Villar to travel there from the Dominican Republic. After spending a day traveling in the Bahamas, Johnson drove Villar to a hotel where he joined four Brazilian men and a Cuban woman who were also trying to

---

[1] Because a jury found Defendant guilty of the present charges, the facts are presented in the light most favorable to the Government, with all reasonable inferences and credibility determinations resolved in favor of the jury's verdict. *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011).

2

illegally enter the United States.  At midnight on May 17, they drove a short way from the hotel to the water.

At the water, Villar saw a small boat; Defendant and a man named Walter Reckley were already on board.  During the trip, Reckley captained the boat and Defendant assisted.  Reckley and Defendant were friends and Defendant agreed to help "run the boat over" to the United States in exchange for $300.  Defendant knew that the passengers were traveling to the United States illegally in order to find better opportunities.

Villar, the four Brazilian men, and the Cuban woman boarded the boat with Reckley and Defendant.  Villar expected the trip to take 45 minutes, but due to bad weather, it took 14 to 16 hours.  During the trip, Defendant used a GPS device to navigate and provided Reckley with directions.  Defendant also refilled the fuel tank with gasoline from gasoline drums and restarted the engine several times when it failed.

When the boat reached Florida, Reckley told everyone to run.  He abandoned the boat on the beach, and everyone took off in different directions.  Shortly thereafter, the Indian River County Sherriff's Office was alerted to their presence.  At around 4:00 p.m., Indian River County deputies saw the boat and the empty gasoline drums on the beach.  The Sherriff's Office, with assistance from the Indian River Shores Department of Public Safety, the United States Border

3

Patrol, Homeland Security, and the Fish and Wildlife Service, found all six passengers—as well as Reckley and Defendant—and took them all into custody. Defendant and Reckley had been sighted walking out of a wooded area. Defendant had $300 in U.S. currency and some of what the apprehending officer believed was Bahamian money. Reckley carried $200 in U.S. currency and several cell phones. The law enforcement officers determined that none of the people on the boat had permission to enter the United States.

At around 2:30 a.m., two officers interviewed Defendant, after the latter had acknowledged and waived his *Miranda* rights.[2] Defendant told the officers that he agreed to help "run the boat over" to the United States for $300. Defendant and Reckley had planned to drop the passengers off and return to the Bahamas, but the boat's engine could not support a trip back. When asked by the officers, Defendant affirmed twice that he knew that the individuals on the boat were entering the United States illegally:

> Officer Robert Vasquez: Did you know that they were trying to come here illegally?
>
> Defendant: Uh, basically . . . basically, yeh, because . . .
>
> Officer James Macek: It's Okay
>
> Defendant: Yeah
>
> . . . .

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Officer James Macek: Not only did it [the boat] have people on it but they were coming to this country illegally.

Defendant: Right.

**B. Procedural Background**

In August 2016, a grand jury indicted Defendant on six counts of knowingly bringing an alien into the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. During the one-day trial, the jury heard testimony from Villar and the six officers who captured and interviewed the individuals from the boat. The jury also heard and read a transcript of an excerpt from Defendant's interview on the night he was captured. At both the close of the Government's case and at the close of all evidence, Defendant moved for judgment of acquittal. The court denied the motion and the jury convicted Defendant on all six counts. Defendant was sentenced to 60 months' imprisonment.

## II. DISCUSSION

Defendant argues that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict. Specifically, Defendant argues that Villar was not a credible witness and that there are explanations for his conduct that do not imply any illegal behavior on his part. We affirm, concluding that there was sufficient evidence for a jury to convict

Defendant of knowingly bringing an alien into the United States for private financial gain.

## A. Sufficiency of the Evidence

We review sufficiency of the evidence *de novo*, viewing all evidence and drawing all inferences and credibility determinations in the light most favorable to the Government. *United States v. Young*, 39 F.3d 1561, 1565 (11th Cir. 1994); *United States v. Thompson*, 422 F.3d 1285, 1290 (11th Cir. 2005). A verdict is supported by sufficient evidence if a reasonable jury could find that the evidence established guilt beyond a reasonable doubt. *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996). "For the evidence to support a conviction, it need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Perez-Tosta*, 36 F.3d 1552, 1556–57 (11th Cir. 1994) (quotation omitted). We only reverse for lack of sufficient evidence if there was not enough evidence for a reasonable factfinder to find guilt beyond a reasonable doubt. *Young*, 39 F.3d at 1565.

## B. 8 U.S.C. § 1324(a)(2)(B)(ii)

Under 8 U.S.C. § 1324(a)(2)(B)(ii), it is unlawful for

Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or

reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien . . . for the purpose of commercial advantage or private financial gain.

8 U.S.C. § 1324(a)(2)(B)(ii).  To establish a violation, the Government therefore must prove that the defendant:  (1) knowingly brought an alien into the United States, (2) knew, or recklessly disregarded the fact, that the alien did not have official authorization to enter the United States, and (3) acted for the purpose of commercial advantage or private financial gain.  *United States v. Kendrick*, 682 F.3d 974, 984 (11th Cir. 2012).  The defendant need not have the specific intent to break the law; "knowingly" merely means that the defendant knew the facts constituting the offense.  *Id.*  The defendant "recklessly disregard[s]" if he is "aware of, but consciously and carelessly ignore[s], facts and circumstances clearly indicating that the person transported was an alien who had entered or remained in the United States in violation of the law."  *Id.* (quoting *United States v. Perez*, 443 F.3d 772, 781 (11th Cir. 2006)).  Finally, to act for private financial gain means that the defendant acted with the purpose of profiting financially.  *United States v. Dominguez*, 661 F.3d 1051, 1066 (11th Cir. 2011).  The defendant can violate the statute even if the smuggling is a financial failure or the defendant is never actually paid.  *Id.*

## C. Analysis

There was clearly sufficient evidence for the jury to find that Defendant violated 8 U.S.C. § 1324(a)(2)(B)(ii).  Based on Defendant's admissions and Villar's testimony, a reasonable jury could find that Defendant knowingly brought aliens into the United States with the knowledge that they were not authorized to enter.  Defendant obviously helped to bring aliens into the United States from the Bahamas:  he navigated the boat, refilled the fuel tank, and restarted the engine.  During Defendant's interview with the arresting officers, the latter asked him twice if he knew that the individuals on the boat were entering the United States illegally.  Defendant answered affirmatively both times.  Indeed, Defendant was helping to pilot a small boat that left the Bahamas after midnight, and the captain of the boat told all the passengers to run once the boat reached the Florida shore.  These facts would lead a reasonable jury to conclude that Defendant had knowledge of, or recklessly disregarded the fact, that the passengers were not authorized to enter the United States.

In arguing that there was insufficient evidence to prove his knowledge and conduct during the voyage, Defendant challenges Villar's credibility as a witness.  Specifically, he says Villar is a convicted felon who hoped to receive a lighter sentence because he had testified at trial.  Further, according to Defendant, Villar's testimony was inconsistent with his previous statements to officers.  But Defendant

8

had ample opportunity to attack Villar's credibility on all these points during cross-examination. The jury's verdict of guilt suggests that it found Villar credible, and we defer to that determination. *See Thompson*, 422 F.3d at 1285 (stating that we accept credibility determinations made in the Government's favor unless they are incredible as a matter of law); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985) ("[T]he fact that the witness has consistently lied in the past, engaged in various criminal activities, thought that his testimony would benefit him, and showed elements of mental instability does not make his testimony incredible.") (quotation marks omitted).

There was also sufficient evidence for the jury to find that Defendant acted for the purpose of private financial gain. Defendant told the officers that he agreed to work on the boat because Reckley paid him $300. In fact, one of the arresting officers found $300 when he frisked Defendant. Although this is not a large amount of money, a § 1324(a)(2)(B)(ii) violation does not depend on how much money the defendant pocketed, it depends on whether the defendant acted for the purpose of making money. *See Dominguez*, 661 F.3d at 1066. Defendant's statement that he worked on the boat because he "want[ed] to make a little change" provided sufficient evidence to infer that Defendant acted for the purpose of his own financial gain.

Notwithstanding this abundant evidence against Defendant, he offers alternative explanations for his conduct.  Defendant argues that the Government's evidence does not contradict an inference that he was merely a passenger on the boat.  According to Defendant, a passenger might add gas to the fuel tank, navigate, and restart a broken engine as an act of self-preservation, given how threatening was the weather during the passage from the Bahamas.  However, "[i]n rebutting the government's evidence, 'it is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.'"  *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009) (quoting *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006)).  And here, there was clearly sufficient evidence for a jury to find guilt beyond a reasonable doubt.

## CONCLUSION

For the above reasons, we conclude there was sufficient evidence for a jury to find that Defendant violated 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 by knowingly bringing an alien into the United States for private financial gain.  We therefore **AFFIRM.**